Grace Building Co., Inc. *v.* Clouser, et ux.

Argued February 8, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Alfred O. Breinig, Jr.,* for appellant.

*C. Howard Harry, Jr.,* for appellees.

OPINION BY JUDGE KRAMER, April 5, 1972:

This is an appeal from an Opinion and Order dated August 20, 1971, of the Court of Common Pleas of Montgomery County granting the prayer of a petition of the Montgomery County Tax Claim Bureau (Bureau) to invalidate an upset price tax sale and declaring said sale null and void.

On April 5, 1965, Donald B. Clouser and Dorothy L. Readinger (appellees) purchased the real estate in question for the sum of $7,500. At the time of the purchase, the appellees were unmarried and resided at 3600 Friedensburg Road, Reading, Pennsylvania (Reading address). The appellees married on August 21, 1965, and continued to live at the Reading address until some time in September 1965, whereupon they moved to 130 Jackson Road, Gilbertsville, Pennsylvania (Gilbertsville address). Prior to the change of residence, they notified the Reading Post Office, and in April of 1966 personally notified the local township tax collector of their change of address. The appellees did not notify any other governmental office of their change of address. The appellees continuously resided at the Gilbertsville address until September 1969, at which time they moved to another address in Pottstown, Pennsylvania. The

appellees paid their real estate taxes for the year 1965 in April of 1966. However, they neglected to pay the real estate taxes due for the years 1966, 1967, 1968 and 1969. The record is quite clear that Mr. Clouser was hospitalized for a "nervous breakdown" and was incapacitated during portions of 1968 and 1969, which explains to some degree the reason for which the real estate taxes were overlooked and went unpaid.

In the meantime, the Tax Claim Bureau of the County properly mailed a notice of delinquency on June 1, 1967, to the Reading address, the only address known to the Bureau. The Reading Post Office crossed out the Reading address, readdressed the envelope using the Gilbertsville address, and forwarded it thereto. The Gilbertsville Post Office, having attempted, but failing, to deliver the notice to the appellees at their Gilbertsville address, on June 3 and June 9, 1967, the notice went unclaimed, and as it appears, the Gilbertsville address was crossed out by a postal clerk and returned to the Bureau as unclaimed. The Tax Claim Bureau made no note on its records of any change of address. On June 6, 1968, a second notice of delinquency was sent to the appellees at the Reading address, and this notice was returned to the Bureau, marked "unknown." The Bureau made no attempt to notify the appellees in 1968 at the Gilbertsville address. On July 15, 1968, the Tax Claim Bureau sent to the appellees at their Reading address a notice of a tax lien sale to be held on September 9, 1968. The Reading Post Office returned the notice to the Bureau marked "moved, left no address," "moved, not forwardable," "address unknown." The Bureau did not attempt to serve the appellees at the Gilbertsville address.

All of these notices were properly sent to the appellees in their unmarried names, inasmuch as the Bureau had no notice of any name change. The record is very

clear that the appellees had no actual knowledge of the tax sale notice or of the impending sale of the realty. On September 9, 1968, the Grace Building Company purchased the property for the upset sale price of $359.06, and the sale was confirmed absolute by the court on January 15, 1969.

In August of 1969, the appellees appeared before the township tax collector to make an offer of payment for the taxes due and were informed that they were no longer the owners of the property inasmuch as an upset tax sale had occurred. After learning of this sale, the appellees were referred to the Tax Claim Bureau of the County. Nevertheless, taxes due and owing for the years 1969 and 1970 were paid by the Clousers and accepted by the taxing authorities. The Bureau filed a petition with the Court of Common Pleas of Montgomery County for a rule to show cause why the tax sale should not be invalidated. In its petition, the Bureau alleged that it had failed to properly notify the appellees in that notice had been sent inadvertently to the Reading address instead of the Gilbertsville address. It should be noted here that the record indicates that the required notice by publication and by posting of the property was properly made.

The court below declared the upset sale null and void on the grounds that the Tax Claim Bureau had failed to carry out its statutory duty by failing to note appellees' Gilbertsville address on its records. The court stated that since the Tax Claim Bureau had not acted in accordance with "ordinary common sense business practice" in searching out the new address of the appellees or to search out the appellees by telephone, the notice was invalid and thereby the sale void.

As this Court held in the case of *Tax Claim Bureau of Montgomery County v. Wheatcroft*, 2 Pa. Commonwealth Ct. 408, 412, 278 A. 2d 172, 175 (1971): "The

notice provisions of the tax sale statute must be strictly complied with in order to guard against the deprivation of property without due process of law. [Citing cases.]"

The Real Estate Tax Sale Law, Act of July 7, 1947, P. L. 1368, as amended, 72 P.S. §5860.101, et seq., sets forth the provisions under which property must be sold for delinquent taxes. At Section 602, 72 P.S. §5860.602, the statute reads, *inter alia*:

"[N]otice of the sale shall also be given by the bureau, at least ten (10) days before the date of the sale, by United States registered mail, personal addressee only, return receipt requested, postage prepaid, to each owner as defined by this act and by posting on the property. . . ."

"No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section."

With specific reference to the address to which the Tax Claim Bureau sent the notices in this case, we hold that the Bureau did all that is required by law. The Bureau mailed notification, properly addressed, in the proper form to the last known address of those persons liable for the payment of the real estate taxes. The Bureau has no statutory duty to search out and find taxpayers liable for real estate taxes. A taxpayer has a duty and responsibility to pay his taxes. Furthermore, it is incumbent upon a taxpayer that he notify the taxing authorities in the event of a change of address. The record in this case is not sufficient to support the ruling of the court below that the Bureau had notice of the change of address by virtue of the handwritten address-correction placed upon the envelope by a postal clerk. In view of the fact that this corrected

address had been stricken through by pencil, it was reasonable for the Bureau to assume that this second address was also erroneous. There was no duty placed upon the Bureau to verify this handwritten change of address, especially since it was stricken through by someone at the Post Office.

The lower court cites the case of *Ross Appeal,* 366 Pa. 100, 76 A. 2d 749 (1950), for the proposition that the taxing authorities cannot ignore ordinary modern common sense business practices. Although the lower court correctly quoted the Supreme Court in the *Ross* case, the facts of the *Ross* case are distinguishable. There, the taxing authorities sent notice to a prior owner and completely ignored the fact that the current owner had paid all the taxes during the time he was in possession. Obviously, in the *Ross* case, the taxing authorities had failed to adhere strictly to the Act. We agree that where notice of a change of address is patently obvious, the taxing authorities are bound to take cognizance of such information and send notices accordingly so that a citizen will not lose his property as a result of a careless disregard of obvious facts. Mindful of the many thousands of tax returns, tax bills, tax payments, delinquent statement mailings and the many delinquent tax sales occurring in the counties of this Commonwealth each year, it would be an overly burdensome task placed upon taxing authorities, for a court to require that tax claim bureaus follow up statutory notice with endless searches in street and telephone directories. Such a liberal interpretation of statutory notice requirements could portend further expansion past county, and perhaps even state boundaries.

Based upon the above analysis, we reverse the court below, and thereby uphold the upset tax sale to Grace Building Co., Inc.