## Powell Tax Sale

*John C. Rogers*, for exceptant.
*Michael A. Hanna*, contra.

DiSALLE, *J.*, April 15, 1975—This is before us on exceptions filed to a tax sale conducted by the Tax Claim Bureau on September 9, 1974, at which sale a vacant lot situate in Robinson Township and owned by Carl J. Powell, Jr., was sold for non-

payment of 1972 county, school and township taxes.

The records of the Tax Claim Bureau show that a notice of filing of the lien for the 1972 taxes was mailed to the property owner at 315 Valley Street, McDonald, Pa., and that this notice was received by him. Mr. Powell admits receiving this notice. However, the records also show that the notice of the sale sent to him on July 25, 1974, was returned to the Tax Claim Bureau unclaimed, this notice also having been mailed to 315 Valley Street. The property was duly posted with a notice of sale on August 13, 1974, and was advertised according to law.

Mr. Powell's parents live at 315 Valley Street, but he has not lived there since 1958, one year after he purchased the property in question. Mr. Powell now lives at 186 South McDonald Street in McDonald and has a place of business next door, at 184 South McDonald Street. Tax notices for these properties are mailed to 186 South McDonald Street.

Mr. Powell admits that ever since he purchased the subject property in 1957, the tax statements and any delinquent notices for the property have always been mailed to 315 Valley Street, McDonald, Pa., (where, as noted, he was living when he acquired the property), and that he has always received them. However, he claims that he suffered a cerebral stroke in June of 1974 and was hospitalized until August 2, 1974, and that therefore he did not receive the notice of sale mailed in July of 1974. He also claims that he paid some taxes in April of 1973 and thought he was then paying his 1972 taxes, although as indicated, he does admit having received the notice of the filing of the lien for the 1972 taxes in August, 1973.

While we sympathize with the plight of the prop-

erty owner in this case, the overwhelming weight of authority is contrary to his position.

In Grace Building Co., Inc. v. Clouser, 5 Pa. Commonwealth Ct. 110, 289 A. 2d 525 (1972), a case very much like the instant one, the Commonwealth Court held that the tax sale was valid where the notice of sale had been mailed in proper form and properly addressed, notwithstanding that the taxpayer had not received notice of the sale and had no actual knowledge of the sale. In Clouser, the court noted that the taxpayers, who had changed their residence, notified the post office and the local tax collector of the change, and that they had paid their 1965 taxes in April 1966. (The property was sold for non-payment of 1966 taxes in September, 1968). In addition, as in the instant proceeding, *"The record is quite clear that Mr. Clouser was hospitalized for a 'nervous breakdown' and was incapacitated during portions of 1968 and 1969, which explains to some degree the reason for which the real estate taxes were overlooked and went unpaid."* (p. 112; emphasis added.) Also, as in this case, the taxpayers paid their 1969 and 1970 taxes, and although the Tax Claim Bureau had already sold their property, it accepted the payments.

Notwithstanding all of the above, the Commonwealth Court in Clouser reversed the order of the court below and upheld the sale. In doing so, the court said (pp. 114-115): "With specific reference to the address to which the Tax Claim Bureau sent the notices in this case, we hold that the Bureau did all that is required by law. The Bureau mailed notification, properly addressed, in the proper form to the last known address of those persons liable for the payment of the real estate taxes. The Bureau has no statutory duty to search out and find taxpayers li-

able for real estate taxes. A taxpayer has a duty and responsibility to pay his taxes. Furthermore, it is incumbent upon a taxpayer that he notify the taxing authorities in the event of a change of address. The record in this case is not sufficient to support the ruling of the court below that the Bureau had notice of the change of address by virtue of the handwritten address-correction placed upon the envelope by a postal clerk. In view of the fact that this corrected address had been stricken through by pencil, it was reasonable for the Bureau to assume that this second address was also erroneous. There was no duty placed upon the Bureau to verify this handwritten change of address, especially since it was stricken through by someone at the Post Office. . . .

"Mindful of the many thousands of tax returns, tax bills, tax payments, delinquent statement mailings and the many delinquent tax sales occurring in the counties of this Commonwealth each year, it would be an overly burdensome task placed upon taxing authorities, for a court to require that tax claim bureaus follow up statutory notice with endless searches in street and telephone directories. Such a liberal interpretation of statutory notice requirements could portend further expansion past county, and perhaps even state boundaries."

More recently, in First Federal Savings and Loan Association v. Swift, 457 Pa. 206, 321 A. 2d 895, (July 1, 1974), the Supreme Court reversed the order of the lower court which had set aside a tax sale where the taxpayer had been erroneously advised that the sale would not take place on the date advertised. The Supreme Court said this (pp. 209-210): "The chancellor correctly observed that there is no basis at law for setting aside the sale. Proper notice was given, and the sale was held at the

court's direction in conformity with the statutory requirements. The court therefore stated that '[t]here is no reason to disturb the sale unless equitable principles are involved which require the granting or relief to the plaintiff.' It did, however, believe that equity empowered the court to grant relief despite First Federal's unilateral mistake. The chancellor set aside the sale. In the circumstances of this case, the grant of equitable relief was error.

"Even recognizing that a court of equity has broad powers, '[i]t is a mistake to suppose, that a court of equity is amenable to no law, either common or statute, and assumes the rule of an arbitrary legislator in every particular case.' Blackstone's Commentaries on the Law 732 (B. Gavit ed. 1941). When the rights of a party are clearly established by defined principles of law, equity should not change or unsettle those rights. . . .

"[C]ourts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid this mistake if reasonable care had been exercised." (p. 213)

In the instant case, Mr. Powell was living at 315 Valley Street, McDonald, Pa., when he purchased the property in 1957. Although he moved away one year later, he continued to receive all tax statements and delinquent notices regarding the property for some 15 years, even though these notices were mailed to the home of his parents at 315 Valley Street. In view of the decisions in Clouser and Swift, supra, we cannot grant him relief. Accordingly, the exceptions filed by him are denied and the sale confirmed.