## York County Tax Claim Bureau

*Joseph W. Moyer,* of *Stetler & Gribbin,* for exceptants.

*Jon C. Bountess, Assistant County Solicitor,* for Tax Claim Bureau.

SHADLE, *P.J.,* August 11, 1976 — These are exceptions by Justus F. Bard, Justus F. Bard, II, and Russell S. Mellinger to a return of sale and petition for confirmation of a tax sale conducted by the

York County Tax Claim Bureau of land owned by exceptants in Lower Chanceford Township, York County. The case was argued and submitted on pleadings and depositions.

Exceptants acquired title to the land in question by a deed dated January 5, 1968, which was duly recorded. Exceptants agreed among themselves that tax bills should be received and paid on their behalf by Justus F. Bard, II, whose precise residence was stated in the deed as 7762 Hawthorne Street, Landover, Md. In 1969, Mr. Bard, moved to 7401 Jefferson Court, Landover, Md., and written notice thereof was given to the tax collector. The records of both the tax collector and the county assessment office were marked to note this change of address.

Beginning in 1969, and for each subsequent year, tax bills were sent to exceptants at 7401 Jefferson Court, Landover, Md. The taxes were duly paid for the years 1968, 1969, 1970 and 1971. In November 1971, Justus F. Bard, II, moved to Lititz, Pa., and he mailed written notice of this change of address to the tax collector. The bills for the 1972 county and township taxes were mailed to him at 7401 Jefferson Court, Landover, Md., were forwarded to him at his Lititz address, and were duly paid by check mailed by him from his Lititz address. However, Mr. Bard neither received nor paid the 1972 school tax bill, nor any tax bills for 1973 or 1974.

Thereafter, the tax collector returned to the bureau as unpaid the 1972 school tax, listing the address of the taxpayers as 7401 Jefferson Court, Landover, Md. The bureau checked the county assessment records, and finding the same address listed thereon, sent to the taxpayers at that address notices of an impending tax sale. These notices

were returned undelivered to the bureau. Notice of the sale also was posted on the premises. The land was sold at tax sale on October 11, 1974, and exceptants timely filed exceptions to confirmation thereof. It is undisputed that exceptants had no actual notice of the sale prior thereto.

Validity of the sale depends on whether the bureau gave notice of the impending tax sale "to each owner" as required by section 602 of the Real Estate Tax Sale Law of July 7, 1947, P.L. 1368, as amended, 72 P.S. §5860.602. Contrary to the provisions of section 308, 72 P.S. §5860.308, which requires mailing of notice of the return of unpaid taxes to the "last known post office address" of the owner, this requirement as to notice of the tax sale was deleted by a 1959 amendment to section 602. The parties here have focused only on the issue of whether there was compliance with section 602.

Three appellate cases have construed this provision. Grace Building Co., Inc. v. Clouser, 5 Pa. Commonwealth Ct. 110, 289 A.2d 525 (1972), involved notice of a change of address given by the taxpayer only to the tax collector and the mailing of the sale notices to the former address. The court there held the tax sale valid, stating that: "The Bureau has no statutory duty to search out and find taxpayers liable for real estate taxes. A taxpayer has a duty and responsibility to pay his taxes. . . . where notice of a change of address is *patently obvious, the taxing authorities are bound to take cognizance of such information and send notices accordingly so that a citizen will not lose his property as a result of a careless disregard of obvious facts.* . . . it would be an overly burdensome task placed upon taxing authorities, for a court to require that tax claim bureaus follow up

statutory notice with endless searches in street and telephone directories." (Emphasis supplied.)

Wyndmoor Estates, Inc. v. Tax Claim Bureau of Montgomery County, 13 Pa. Commonwealth Ct. 475, 319 A.2d 192 (1974), involved notice of a change of address given by the taxpayer both to the tax collector and the county assessment office, that change was noted on the records of both of such "taxing authorities," and the sale notices were mailed to the former address. The court held the tax sale invalid, stating: "We can think of no more obvious or readily available place to find an address, where, as here, a first notice has been returned, than *in the county's own records* of the assessment upon which the delinquent taxes were based." (Emphasis supplied.)

Finally, Grace Building Co., Inc. v. Chester County Land Corporation, 19 Pa. Commonwealth Ct. 269, 339 A.2d 161 (1975), involved notice of a change of address given by the taxpayer both to the tax collector and the County Assessment Office, and the mailing of the sale notices to the former address. Relying on Clouser and Wyndmoor, the court held the tax sale invalid, repeating that " 'where notice of a change of address is patently obvious, the taxing authorities are bound to take cognizance of such information and send notices accordingly.' "

The precise question before us is whether the giving of notice of a change of address by a taxpayer only to the local tax collector, but not to the county assessment office, constitutes "patently obvious" notice to the "taxing authorities" so as to require the tax claim bureau to send tax sale notices to such a changed address. We hold that it does.

In the first place, in this case, the notice given by exceptants only to the tax collector of their first change of address was sufficient to cause the records of both the tax collector and assessment office to be corrected to show the change and to cause the tax bills for the ensuing three years to be sent to the corrected address. Secondly, two of the three 1972 tax bills were properly mailed and paid, and only the 1972 school tax bill was omitted. These facts distinguish the case from Clouser, supra. Furthermore, a taxpayer's sole contact with the "taxing authorities" consists of the local tax collector from whom he receives his bills and to whom he pays his taxes. It simply is unrealistic to expect the average taxpayer to be aware of the existence, location and role of the county assessment office and the tax claim bureau, and to notify them as well as the tax collector of his changed address.

It is fair to balance the burden of diligence on the parties. A taxpayer who fails to notify anyone of his change of address must suffer the consequences of his failure to receive tax bills and notices of an impending tax sale. However, when that taxpayer notifies his local tax collector of a changed address, it is not too much to expect that official not only to change his records accordingly, but also to notify the county assessment office with whom he has constant contact of the change. Neither is it unreasonable to expect the tax claim bureau to verify both with the tax collector and the assessment office the latest available address of the taxpayer when it proposes to sell his property for unpaid taxes. This certainly is not equivalent to "endless searches in street and telephone directories" which Clouser found to be too burdensome. In all

the cited cases, as well as the instant one, the failure to mail sale notices to the proper address was directly attributable to the fact that the local tax collector ignored the latest address of which he admittedly had notice and showed only the former incorrect address when he returned the deliquent tax to the tax claim bureau. For this dereliction the "taxing authorities" must bear the responsibility.

We conclude in this case that the notice of change of address given by exceptants to the tax collector was patently obvious, and that the taxing authorities were bound to take cognizance of such information and send notices accordingly so that exceptants would not lose their property as a result of a careless disregard of obvious facts. Not having done so, exceptants' exceptions to the return of sale must be sustained and the sale set aside as invalid. The premises will continue to be subject to all unpaid taxes levied and returned against them.

### ORDER

And now, August 11, 1976, the exceptions filed by exceptants to the return of sale are sustained, and the tax sale of the premises in question is set aside as invalid. The bureau is directly to refund to the purchaser at the tax sale the purchase price paid by him. An exception is noted for the bureau.