In Re: Return of Tax Sale by Indiana County Tax Claim Bureau. Frank W. Clawson, Louis Emanuel and the Indiana County Tax Claim Bureau, Appellants.

Argued November 3, 1978, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*Louis Emanuel,* with him *Buchanan, Ingersoll, Rodewald, Kyle & Buerger; Daniel V. Delaney;* and *Delaney, Vuckovich, Carmella & Delaney,* for appellants.

*Carl G. Wass,* with him *Caldwell, Clouser & Kearns; Gregory A. Olson;* and *Marcus and Olson,* for appellees.

OPINION BY JUDGE ROGERS, January 3, 1979:

Frank W. Clawson and Louis Emanuel purchased 48 acres of land in Banks Township, Indiana County, at a delinquent tax sale conducted by the County Tax Claim Bureau in September 1977. The property was exposed for delinquent tax sale on account of the failure of the owners, Robert L. Glenn and Barbara E. Glenn, to pay a bill in the amount of $12.75 for school taxes for the year 1975. Upon learning of the sale of their property for delinquent taxes by means of a letter dated October 3, 1977 from the local tax collector refunding their payment of 1977 County and Township taxes, the Glenns filed timely exceptions to the Tax Claim Bureau's Return of the 1977 tax sales, asserting that the Tax Claim Bureau had failed to send a notice of the impending sale to their last known address as required by Section 602 of the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §5860.602.[1]

---

[1] Section 602 in fact provides only that the Bureau shall give ten days notice of the sale by certified mail to each owner. We and the parties to this litigation agree that this mailing must be

The Court of Common Pleas of Indiana County, after a hearing, agreed with the Glenns that the notice had not been sent to their "last known post office address" and set the tax sale aside. Clawson and Emanuel have appealed. We affirm.

The Glenns purchased the 48 acre property in Banks Township in September 1971. Their post office address at that time was 2801 North Second Street, Harrisburg. The Banks Township tax collector, who was the same person throughout this unhappy history, mailed the real estate tax bills for the years 1972, 1973 and 1974 to the Glenns at their Second Street address, and the Glenns duly paid the bills.

The Glenns moved from Second Street to 5603 Devon Drive, Harrisburg, Pennsylvania, in May of 1974. They notified the United States Postal Service of the change of their address but failed at that time to notify any tax authority of Indiana County of the change. As noted, the township tax collector sent the 1974 bill to the old, Second Street, address. This bill was printed and had places for recording the amount due for each of the three local taxes and a total amount due, as follows: county tax $3.25; road tax $1.50; school tax $12.50. The notation "$12.50" after "school tax" was lined out in ink as was also the figure "$17.25" appearing as total tax due. The figure "$4.75" was written on the bill as the total. The Glenns paid the tax bill with a check for $4.66 dated July 17, 1974 (the discrepancy being the result of a two percent (2%) discount for prompt payment). The check provided by the Glenns bore a printed legend containing their names and the address 2801 North Second Street, Harrisburg, Pennsylvania, 17110. The

---

sent to the owners' "last known post office address," as is required with respect to other mailed notices under the Act by Section 308, 72 P.S. §5860.308.

writer of the check, Barbara E. Glenn, had in ink struck a line through 2801 North Second Street and the zip code and had written beside these items, respectively, "5603 Devon Drive" and "17112." On or about August 1, 1974, the tax collector sent the Glenns a separate school tax bill for 1974 in the amount of $12.75. This bill was sent to the Glenns at their old, Second Street, address; forwarded by the Postal Service to the Glenns at their new address, and promptly paid.

The tax collector also sent the 1975 bills to the Glenns at their old, Second Avenue, address. Although these bills were never received by them, the Glenns in April 1975 mailed their check for $4.75 to the tax collector. The amount, $4.75, was approximated by the same amount they had paid in 1974 and therefore the amount they thought they owed. This check had the Glenns' new, Devon Drive, address printed on its face. Again in 1975 the school tax was separately billed to the Glenns' old, Second Avenue, address in August 1975. It never reached the Glenns. The nonpayment of this tax was the occasion for the tax sale which is the subject of this suit.

On or before the first Monday of May 1976, as is required by the Real Estate Tax Sale Law, the township tax collector filed with the Tax Claim Bureau a claim for the unpaid 1975 school tax against the Glenns' property. As subsequent events prove, if the tax collector then supplied the Bureau with an address it was the old, Second Street, address rather than the new, Devon Drive, address.

In May and September 1976 the local tax collector again sent the Glenns' tax bills to their old, Second Street, address. The bills, of course, did not reach them and they paid no taxes during the year 1976. In March of 1977, Robert L. Glenn called the local tax collector on the telephone, told her they had not re-

ceived the 1976 bills and provided her with their correct, Devon Drive, address. The tax collector promptly sent duplicate bills for the 1976 taxes to the Glenns at the Devon Drive address and the Glenns promptly paid these taxes. The tax collector never informed the Glenns that they still owed 1975 school tax or that she had filed a claim for the unpaid 1975 school tax in May of 1976, nor did she inform the Tax Claim Bureau of the Glenns new, Devon Drive, address, which by that time had appeared on a number of their checks since 1974 and of which she had been specifically informed in the telephone conversation with Robert L. Glenn. The Tax Claim Bureau addressed the certified mail notice of the sale scheduled for September 1977 to the Glenns at their old, Second Street, address. The mail did not reach the Glenns and was returned to the Bureau by the Postal Service.

Two additional matters of significance appear in the record. The first is the testimony of the Director of the Tax Claim Bureau that it was standard procedure of the Bureau to call on local tax collectors "for better addresses" if the certified letter giving notice of the sale is returned to the Bureau. He conceded under questioning both that it was possible that the Banks Township tax collector had not been called as the tax collector had testified, and that if a call had been made a better address for the Glenns would have been obtained. The second matter of record additionally worth recording is the fact that only four Banks Township properties were exposed to sale in September 1977, and one person owned two of the four properties.

The appellants, Clawson and Emanuel, say that the phrase "last known post office address" means the last post office address known to the Tax Claim Bureau, not the local tax collector; and that the decision below in this case requires the Tax Claim Bureau

prior to each tax sale to ask tax collectors if they have new addresses for delinquent taxpayers, although there is nothing in the statute imposing this duty on the Bureau.

As for the appellants' first point, the decided cases have sensibly not taken the narrow view of the statute they propose. Recognizing first, that very few owners of real estate are aware of the existence of the Tax Claim Bureau, much less its function, but that all know about their local tax collector and most have some familiarity with the county assessment office, and second, that in reality the Tax Claim Bureau, the county assessment office and the local tax collector, are all merely parts of one system of local tax administration, we have held that the last post office address known to the tax collector and the county assessment office, although unknown to the Tax Claim Bureau, is the owner's "last known post office address" to which the Bureau must send notices if it is to comply with Sections 308 and 602 of the Real Estate Tax Sale Law. *Wyndmoor Estates, Inc. v. Tax Claim Bureau of Montgomery County*, 13 Pa. Commonwealth Ct. 475, 319 A.2d 192 (1974). *Grace Building Co. v. Chester County Land Corp.*, 19 Pa. Commonwealth Ct. 269, 339 A.2d 161 (1975). Although the owners' last address was known only to the tax collector, the same result must obtain[2] in this case, where: the Glenns notified the tax collector of their last address months before the tax sale; the Glenns paid all local taxes due for the two years after their failure to pay the 1975 school tax, a fact known to the Tax Claim Bureau because it was required by Section 605 of the Real Estate Tax Sale Law to include unpaid taxes for periods subsequent to the delinquen-

---

[2] The same result did obtain in *York County Tax Claim Bureau*, 3 Pa. D. & C. 3d 196 (1976).

cy in the sale upset price; and a substantial land holding was exposed to sale for a comparatively trifling delinquency. There is nothing novel about this or our earlier holdings just referred to. They are consistent with the tenor of *Ross Appeal,* 366 Pa. 100, 76 A.2d 749 (1950), where the Supreme Court in considering the notice requirements of the Real Estate Tax Sale Law expressed concern that the Tax Claim Bureau in question upon observing that the owner had paid taxes in years subsequent had made no inquiry of the local tax collector and observed that the statute was not meant to punish taxpayers for an oversight or error but to protect local government against wilful, persistent, long-standing delinquents.

The appellants' argument that the decision in favor of the owners in this case requires the Bureau to make inquiries of the tax collector, a duty not imposed by the statute, is expressive of a fundamentally mistaken, but not uncommon, view of the notice requirements of the Real Estate Tax Sale Law and similar enactments. Briefs and some opinions in this field seem to read these statutes as imposing duties on the owners of real estate to keep the Tax Claim Bureau or other agency in charge of delinquent tax sales informed of their last post office address. It is true that owners who persistently fail to pay their taxes and who change their residences without notice to local tax authorities risk losing their properties. The statutes, however, impose duties, not on owners, but on the agencies reponsible for sales; and such of those duties as relate to the giving of notice to owners of impending sales of their properties must be strictly complied with. *Grace Building Co. v. Clouser,* 5 Pa. Commonwealth Ct. 110, 289 A.2d 525 (1972). Hence, the inquiry is not to be focused on the neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the

requirements of the statute. Since the due process which by constitution must accompany every appropriation of private property includes a requirement of reasonable notice to the owner, it appears to us entirely appropriate that we should construe the statutory provision for mailing such notice to the owner's "last known post office address" as meaning the last post office address in the possession of the local tax collector. Nor do we believe that this construction imposes an inappropriate burden of work on, in this case, the Tax Claim Bureau of Indiana County. The Return of Tax Sales in the record shows that in September 1977 only seventeen properties located in only eleven municipalities were sold and, indeed, the Bureau's commendable standard procedure was to seek better addresses from the tax collectors in cases where the mailed notices were returned to the Bureau. The onus of the fact that in this case the procedure was not followed, or was not effective to place the Glenns' "last known post office address" in the possession of the Bureau, may not be imposed on them.

Order affirmed.

### ORDER

AND Now, this 3rd day of January, 1979, the order of the Court of Common Pleas of Indiana County dated February 9, 1978 is hereby affirmed.