## Scott v. Montgomery County Tax Claim Bureau

*William L. Huganir,* for Amy Scott.
*Alfred Breinig, Jr,* for B.&B. Equities.
*Maureen H. McCullough,* for objector.

BROWN, *J.*, July 7, 1986—This action arises out of the tax sale of premises at 221 E. Basin Street, Norristown, on September 10, 1984.

On May 17, 1983 a notice of return and claim was sent by certified mail, return receipt, to Amy Scott at 221 E. Basin Street, Norristown, stating that the taxes for 1982 were overdue. The return receipt was signed by a Wendy Lockman. A short time later, Amy Scott was adjudicated incompetent and Lockman was appointed guardian of her estate on September 28, 1983. On October 25, 1983 Lockman's bond was filed and approved.

On June 1, 1984 a notice of return and claim for the unpaid taxes for 1983 was sent to Amy Scott at 221 E. Basin Street. This notice was returned unclaimed.

On July 6, 1984 notice of a public tax sale was sent to Amy Scott at the Basin Street address. "Moved" and "c/o Wendy Lockman, 1444 Willow Street" were handwritten on the envelope; delivery to the Willow Street address was attempted on July 25 and August 4. The notice of a certified letter was never responded to and the letter returned to the tax claim bureau unclaimed. Notice of the sale was posted on the property on August 6, 1984.

On August 15, 1984 a second notice of public tax sale was sent to Amy Scott at the Basin Street address. "c/o Wendy Lockman, 1444 Willow Street" again was handwritten on the envelope. Again there was no response to the notice after the attempted delivery to that address, so the letter was returned unclaimed.

B&B Equities purchased the property on September 10, 1984. On September 14, 1984 a warning that the property had been sold for delinquent taxes was sent to Amy Scott at the Basin Street address. "C/o 1444 Willow Street" was handwritten on the envelope. Delivery there was attempted on September 19 and 24, again no response and the letter was returned to the bureau unclaimed on October 4, 1984.

On November 7, 1984 the court issued a decree nisi confirming the sale, providing that said confirmation was to become absolute if no objections or exceptions were filed within 60 days of the decree.

On December 19, 1984, exceptions were filed to the tax sale alleging (1) lack of notice, (2) that the tax claim bureau acknowledged the sale was defective and (3) that the county had returned the proceeds of the sale to the purchaser. On January 7, 1985, B&B Equities filed objections and exceptions to the consolidated return, alleging that Lockman had a legal duty to register her appointment as guardian with the tax claim bureau, etc., and by failing to do so, was not entitled to receive notice of the tax sale.

Section 308 of the Real Estate Tax Sale Law, 72 Pa.C.S. §5860, provides:

"§5860.308. Notice of filing of returns and entry of claim.

"(a) . . . the bureau shall give notice of the return of said taxes and the entry of such claim to each delinquent taxable by United States registered mail or United States certified mail, return receipt requested, postage prepaid, addressed to the *owner* personally at his *last known post office address*. . . . If no post office address of the owner is known or if notice mailed to an owner at such last known post office address is not delivered to him by the postal authori-

ties, then notice as herein provided shall immediately be posted on the property affected." (Emphasis added.)

Section 308 sets forth the information this posted notice must contain and subsection (c) provides that notice given in this manner constitutes proper service on the owner and a statement in the claim entered that due notice of the same was given shall be conclusive evidence that notice was given as required by law.

Notice of the sale is governed by §5860.602, which provides:

"[S]imilar notice of the sale shall also be given by the bureau, at least 10 days before the date of the sale, by United States registered mail, personal addressee only, return receipt requested, postage prepaid, to each owner as defined by this act and by posting the property."

It further provides:

"No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section."

"Owner" is defined by section 102 as the "person in whose name the property is last registered. . . ."

The owner in this case, however, was an adjudicated incompetent. Whenever notice is to be given to a person who is not sui juris, notice shall be given to his guardian. 4 Hunter, Orphan's Ct., Pennsylvania Orphan's Court Commonplace Book, §13(b), 387; 20 P.S. §320.1085. In In re Consolidated Return of Tax Claim Bureau of the County of Delaware, 75 Pa. Commw. 108, 461 A.2d 1329 (1983), the court held that giving notice of a tax sale to a landowner who was unable to understand the meaning and significance of the notice sent to her

because of incompetency did not satisfy due-process requirements, thereby rendering the tax sale invalid. The issue of the owner's incompetency was raised after the sale was confirmed absolutely and a tax deed issued to and recorded by the tax sale purchaser. There was no dispute that the notice required by law was given, but the statute presumes that the owner would be a person of ordinary competency and understanding and capable of protecting his interests. Where the evidence is to the contrary, considerations of due process and public policy require the sale be upset. The right of a citizen not to be deprived of his property outweighs any detriment to the taxing authority or the purchaser. The court states at 1332:

"In Ross Appeal, 366 Pa. 100, 676 A.2d 749 (1950), our own Supreme Court held that the strict provisions of the law were never meant to punish taxpayers who omitted through oversight or error to pay their taxes; rather the law was intended to protect the local government against willful, persistent and long standing delinquents for whom the court had little sympathy. Our own court's insistence upon strict compliance with the notice provisions of the law is to assure that the landowner is fully aware of the default and of the proposed sale and thereby to guard against deprivation of property without due process of law. To give notice to a person who cannot comprehend it through no fault of that person is a "mere gesture" which would not afford the notice required to satisfy the due-process requirements of the United States Constitution, thus rendering a tax sale pursuant to such defective notice, invalid."

Even though Amy Scott had a court-appointed guardian, notice was sent directly to her rather than to the guardian. This was no fault of the tax claim bureau which had no notice of the incompetency.

B&B Equity argues that Lockman had a duty to advise the tax claim bureau of her appointment and change of address. While this may be true, the focus of our inquiry must be not on her neglect (which is patent in view of her continuing failure to respond to the certified letter notices) but on whether the bureau's investigation complies with the requirements of due process.

The line of cases from the Commonwealth Court before 1985 interpreting the statute placed no duty on the tax claim bureau to search out and find taxpayers liable for real estate taxes. It was incumbent upon a taxpayer to notify the authorities in the event of a change of address. Grace Building Co., Inc. v. Clouser, 5 Pa. Commw. 110, 289 A.2d 525, 528 (1972). The Tax Claim Bureau is not required to search estate notices, probate or deed records, or street or telephone directories for owners. Clouser, supra, at 528. However, Clouser does require:

"[W]here notice of a change of address is patently obvious, the taxing authorities are bound to take cognizance of such information and send notices accordingly so that a citizen will not lose his property as a result of a careless disregard of obvious facts."

In the 1985 case of Tracy v. County of Chester, Tax Claim Bureau, 507 Pa. 288, 489 A.2d 1334 (1985), the Pennsylvania Supreme Court construed past interpretations of the Real Estate Tax Sale Law by the tax claim bureau and lower courts as constitutionally infirm. Citing the U.S. Supreme Court in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the new mandate is "that under the due-process clause a *reasonable effort* must be made to provide *actual* notice of an event which may significantly affect a legally protected property interest." The court held:

". . . that where a taxing authority intends to conduct a sale of real property because of non-payment of taxes, it must notify the record owner of the property by personal service or certified mail, *and where the mailed notice has not been delivered because of an inaccurate address,* the authority must make a *reasonable effort* to ascertain the identity and whereabouts of the owner(s)." (Emphasis in original.) Tracy, supra, at 1338.

Applying this analysis, it is clear that a reasonable effort was not made to ascertain the whereabouts or condition of Amy Scott. Notice of a change of address here was patently obvious. The first notice of return and claim in May of 1983 was signed by Lockman. The notice of June 1984 was returned unclaimed, the next three notices had "moved," "c/o Wendy Lockman, 1444 Willow Street" handwritten on the envelope returned to the bureau. Continuing to send notices to the Basin Street address was a "careless disregard for obvious facts." Just what would be a reasonable effort in this instance we need not decide because no effort was made. In Tracy, supra, the Supreme Court suggested a reasonable effort would have been to make inquiries of the records maintained by the Office of the Secretary of the Commonwealth in Harrisburg to determine the identity and addresses of the partners whose property was sold at sheriff's sale in that case. A telephone call to the Willow Street address, a letter to Wendy Lockman (although we recognize it may have been ignored as were the certified letter notices), a visit to the premises which are but a short distance from the tax bureau's office, are some among other alternatives which might have been employed in order to seek out the taxpayer in this case. A rigid meeting of the bare minimum required

by the Real Estate Tax Sale Law was what Justice Nix censured in Tracy when he said:

"Somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and the Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes. We have had occasion before to note that we hold no brief with wilful, persistent and long standing tax delinquents, but at the same time, we have also observed that the "strict provisions of the Real Estate Tax Sale Law were never meant to punish taxpayers who omitted through oversight or error . . . to pay their taxes." Ross Appeal, 366 Pa. 100, 107, 76 A.2d 749, 753 (1950). As this court stated in Hess v. Westerwick, "the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes." 366 Pa. 90, 98, 76 A.2d 745, 748 (1950). The collection of taxes, however, may not be implemented without due process of law that is guaranteed in the Commonwealth and federal constitutions; and this due process, as we have stated here, requires at a minimum that an owner of land be actually notified by government, if reasonably possible, before his land is forfeited by the state. Reasonable efforts to effect actual notice were not carried out in this case, and the tax sale of this property must be set aside. Tracy, supra, at 1339.

The exceptions to the September 10, 1984 tax sale of the premises at 221 E. Basin Street, Norristown, are sustained and the sale set aside.