## Ganzer v. Erie County Tax Claim Bureau

*Mark W. Richmond,* for plaintiff.

*Ted G. Miller,* for defendant Erie County Tax Claim Bureau.

*David E. Holland,* for defendant Eastlake Development Corp.

LEVIN, *J.,* April 2, 1993—The action before the court involves an appeal from the tax sale of the petitioner's property. The petitioner, Barbara Ganzer, was the owner of a parcel of real estate situated at 4510 Highview Boulevard, Erie County, Pa. Petitioner did not pay her real estate taxes on the property for the years 1990 and prior. Thus, the property was scheduled to be sold by the Erie County Tax Claim Bureau pursuant to the Real Estate Tax Sale Law of 1947, 42 P.S. §5860.101 et seq. The public sale was conducted by the bureau on or about September 28, 1992. Although the subject property had an estimated value of $80,000, the upset price established by the bureau for the property was $10,573.81. The subject property was purchased by Eastlake Development Co. for said upset price. Ganzer filed a timely objection to the sale in which she alleged that the bureau failed to properly post notice of the sale of the property at least 10 days prior to the sale as required by 72 P.S. §5860.602.

The parties entered into the following stipulation:

"And now, come the undersigned counsel and stipulate and agree as follows regarding the above-captioned matter: The only alleged defect regarding the tax sale of September 28, 1992 regarding the premises at 4510 Highview Boule-

vard, Erie County, Pa., (18)5318-101 (the premises), is whether the notice of sale required by 72 P.S. §5860.602, which was posted conspicuously on the premises on September 15, 1992 in compliance with the statute, remained posted on the premises for the 10-day period prior to the said tax sale."

There is no question that the property was posted by an employee of the bureau on September 15, 1992, which was more than 10 days prior to the tax sale. The notice was posted with scotch tape. Further, there is no doubt in the court's mind, based on uncontested testimony, that the aforementioned notice did not remain posted for a long period of time or for the full 10 days. There was no evidence that Eastlake, the ultimate purchaser of the property, interfered with the notice requirement. Admittedly, the bureau concedes that it did not monitor the premises to see if the posted notice remained at the premises from the time of posting until the time of sale. Ganzer agrees that she had notice of the impending sale in that she signed for the notice of sale prior to the sale. Her exact quote on this admission appears in the transcript as follows:

*"Mrs. Ganzer:* I signed for it, and when I read it, we read it—the first paragraph is what the sale of the—but when the second sale—the second paragraph, which is what hits you you look at the—at the piece of paper. When—apparently, when I went back and reread it, if it's not sold on the first date, the second date is—and that date was October 12th, and that—" (Transcript, p. 21)

The bureau contends that the second date is placed on the notice so that the notice is not duplicated. If

the original date on which the sale is set is not consummated, the sale is continued.

The sole issue in this case is whether the Erie County Tax Claim Bureau properly posted the notice of sale required by 72 P.S. §5860.602 on the property at least 10 days prior to the tax sale, as well as whether the bureau has an affirmative duty to continue to check the posting on the premises from the time of posting until the time of sale.

Section 602 of the Tax Law, 72 P.S. §5860.602, states as follows:

"(a) At least 30 days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notices shall set forth: (1) the purpose of such sale; (2) the time of such sale; (3) the place of such sale; (4) the terms of the sale including the approximate upset price; (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

"(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

"(1) At least 30 days before the date of the sale, by U.S. certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this Act.

"(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least 10 days before the date of the sale, similar notice of

the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

"(3) Each property scheduled for sale shall be posted at least 10 days prior to the sale."

It is well settled in Pennsylvania that the notice provisions of a tax sale statute must be strictly construed as well as strictly complied with. *In re Molchan,* 94 Pa. Commw. 423, 503 A.2d 105 (1986); See also, *In re Upset Price Tax Sale of September 25, 1989,* 150 Pa. Commw. 191, 615 A.2d 870 (1992), to prevent the deprivation of property without due process of law. However, where a Tax Claim Bureau has done all that is required by the law, the sale of real estate for delinquent taxes must be confirmed. *Kleinberger v. Tax Claim Bureau of Lehigh County,* 64 Pa. Commw. 30, 438 A.2d 1045 (1982); *Grace Building Co. v. Clouser,* 5 Pa. Commw. 110, 289 A.2d 525 (1972). There is no question in this case that the property was properly advertised and that the tax sale notice was sent in conformity with the law and was received by the petitioner. Likewise, the actual posting of the premises by the bureau's employee was in compliance with the minimum requirements of the law. See *Lapp v. County of Chester,* 67 Pa. Commw. 86, 90, 445 A.2d 1356, 1358 (1982). Therefore, the minimum requirements were met.

Ganzer relies heavily on *Little Appeal,* 18 D.&C.3d 19 (1981). This reliance is misplaced. In *Little, supra,*[1] there was no stipulation that the subject property was posted in compliance with the statute and notice was also faded and possibly misleading. *Id.* at 21-22. The former owners claimed that they were misled by that faded notice. *Id.* at 21. Another cogent fact appearing in the case at bar, as opposed to *Little,* is the fact that the former owner admits that she received a formal notice of sale.[2] These facts clearly make the instant case distinguishable from *Little.*

Further, the Pennsylvania Commonwealth Court in *Matter of Erie County Tax Claim Bureau,* 102 Pa. Commw. 32, 35-36, 517 A.2d 221, 222-23 (1986), specifically held that the Tax Claim Bureau does not have an affirmative duty to make sure the notices remain posted.

In the case of *York v. Roach,* no. 4713-A-1991, the court had this to say about the unfairness of a tax sale:

"To state that the court is most upset with this opinion and order would be a gross understatement. The court abhors with passion forfeiture of a property interest and certainly does not wish to place its seal of approval on same. Yet the court is constrained to follow the law that it determines is applicable to the factual scenario before it. It must do so even if the court on a moral and personal basis disagrees with the ultimate result caused by the court's opinion. If the court felt that it possessed the latitude to set aside the tax sale by holding that the

1. These facts refer to the appeal of *Sheely* which is a part of the *Little* appeal.

2. It is unclear in the *Little* case whether such notice was received.

bureau did not follow its mandate in informing the delinquent taxpayer of its option to enter into an installment agreement, it would set aside the sale.

"Hopefully, on appeal, an appellate court will disagree with this court and find the court had the power to set aside the sale for the reason the bureau did not carry out its affirmative duty to give personal notice to the property owner of its options even though the property owner had actual knowledge. Maybe if the appellate court does not agree with this court, perhaps the state Legislature will make appropriate changes in the law to protect property owners. If the appellate court or the Legislature were to act in this regard, the court would have no misgivings in supporting said decision. In fact, knowing that other delinquent taxpayers would be protected from the forfeiture of their home in these types of circumstances would give the court great peace of mind."

However, this case is far more egregious than *York, supra.* Here, the property is worth approximately $80,000. It was purchased for approximately $10,000. To allow such a forfeiture, and for the court to put its seal of approval on same, is to place a perceived black mark on our system of justice. It is cases like this that make the general public look with disfavor upon the courts and our system of justice. Yet the court must follow the law of this Commonwealth since the sale unfortunately met the minimum requirements of law necessary to uphold a sale.

In this case, Eastlake may well have complied with the law but in doing so made an exorbitant profit. Even assuming that Eastlake cannot realize the full $80,000

but only $70,000 on the sale of the property, they will be realizing a profit of 600 percent on an investment of $10,000 in less than a year. This exorbitant income is being obtained on the back of the unfortunate property owner. An entity, be it Eastlake or another, waiting to make a purchase of a tax sale property is analogous to a vulture waiting to land on an unsuspecting prey. A purchaser, now or in the future, is not using the court to obtain justice but merely to satisfy its own needs. Unfortunately, the courts are not the proper forum to change the laws in this matter. It is up to the legislators to determine that a windfall should not be bestowed upon third parties at the expense of property owners in these situations. In *York, supra,* the court hoped that the appellate court would reverse it on appeal. In the instant case, this court would not only hope so, but would be most appreciative if the appellate court would either inform this court that it does have the power to set aside the sale under the existing law or change their interpretation of the law, either of which would prevent this unfortunate event from taking place.

Nevertheless, considering all of the above and particularly that there is no statutory requirement that the notice be affixed to the premises in a certain fashion and no court decision requiring the bureau to continue to inspect the premises to see if the notice is posted, the court must, with great reluctance, uphold the tax sale.

## ORDER

And now, April 2, 1993, it is hereby ordered, adjudged and decreed that the objections to the tax sale filed by the plaintiff are dismissed and the tax sale is upheld.