In Re: Upset Sale, Tax Claim Bureau of Bucks County, Pennsylvania Etc. Irvin E. Povlow, Appellant.

436

Submitted on briefs October 5, 1979, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

■■■■■■■■■■
■■■■■■■■■■
■■■■ ■■■■

*John D. Trainer,* with him *Power, Bowen & Valimont,* for appellant.

*Roger A. Johnsen,* for appellee.

OPINION BY JUDGE CRAIG, January 10, 1980:

An unpaid 1974 Bensalem Township interim tax of $23.10 resulted in a tax sale by the Bucks County Tax Claims Bureau (bureau), on October 18, 1976, of property, having an agreed fair market value in excess of $30,000, to appellant for $1,025. The Real Estate Tax Sale Law[1] (Tax Sale Law) governed the sale.

The bureau mailed the notices of the delinquent tax claim and the impending tax sale, required respectively by Sections 308 and 602 of The Tax Sale Law,[2]

---

[1] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §5860.101 et seq.

[2] 72 P.S. §§5860.308, 5860.602.

by certified mail to the address of the property with the addressee as Vincent and Lois Irving, who had purchased the property in August of 1974, but who had since moved away. The post office returned the Section 308 notice of the delinquent tax claim (mailed June 26, 1975) marked "unclaimed." The following year, the bureau addressed the Section 602 notice of the impending sale to the same persons at the same address, but, having again received no reply, adjourned the sale until October 18, 1976 for the stated purpose of effecting "informal notices to record owners." On September 30, 1976, the bureau then mailed a second notice of the sale to the Irvings to the same address. The post office again returned it marked "moved, left no address."

Meanwhile, Commonwealth Federal Savings and Loan Association (the Association), which held a mortgage on the property, had begun mortgage foreclosure proceedings in January of 1976. As the successful bidder at a sheriff's sale resulting from the mortgage foreclosure, the Association purchased the property on September 10, 1976 and recorded its deed on September 22, 1976, eight days before the bureau mailed its final Section 602 notice and nearly a month before the bureau conducted the tax sale.

Notice of the mortgage foreclosure proceedings had been duly posted in the Bucks County Sheriff's Office for some time.

After the tax sale, the Association filed exceptions to it. The lower court overturned the tax sale with directions to the Association to pay the purchase price to appellant within 30 days of its order or within 30 days of such time as its order might be affirmed on appeal.

Section 602 of the Tax Sale Law requires that notice of pending tax upset sales be sent to each "owner." Owner is defined by Section 102 of the Tax Sale

Law, 72 P.S. §5860.102, as the registered owner or the person in open notorious possession as apparent or reputed owner.

During the relevant time period here, the property was vacant, albeit for part of the time posted for sale under the mortgage foreclosure. Because no deed registry system exists in Bucks County, and because there is no evidence here of an apparent or reputed owner, the Section 102 definition is of no help in deciding whether the bureau complied with the Section 602 directive that notice be sent to the "owner." We have only the fact that, on September 22, 1976, the Association became the record owner, but the definition section of the Tax Sale Law places no significance upon ownership of record.

The lower court, in its lengthy discussion of this case, recognized the dilemma in turning, as we do, to the seminal notice cases under the Tax Sale Law, *Hess v. Westerwick,* 366 Pa. 90, 76 A.2d 745 (1950), and *Ross Appeal,* 366 Pa. 100, 76 A.2d 749 (1950).

*Hess v. Westerwick, Ross Appeal* and our own cases following them have entrenched the axiom that the notice provisions of the Tax Sale Law are strictly construed to guard against deprivation of the property without due process of law. *See Clawson Appeal,* 39 Pa. Commonwealth Ct. 492, 395 A.2d 703 (1979); *Teslovich v. Johnson,* 37 Pa. Commonwealth Ct. 449, 391 A.2d 11 (1978), *aff'd,* 486 Pa. 622, 406 A.2d 1374 (1979); *Sale of Properties by Indiana County Tax Claim Bureau,* 22 Pa. Commonwealth Ct. 147, 348 A.2d 440 (1975).

With reference to a case where a tax claims bureau had not mailed a notice to the last known address, although addressed to the correct owner's name, Judge Rogers, speaking for the court in *Clawson Appeal, supra,* held that the local tax collector's knowledge of

the owner's last known address could be imputed to the tax claims bureau, stating:

> [Such a holding is] consistent with the tenor of Ross Appeal ... where the Supreme Court in considering the notice requirements of the Real Estate Tax Sale Law expressed concern that the Tax Claim Bureau in question upon observing that the owner had paid taxes in years subsequent had made no inquiry of the local tax collector and observed that the statute was not meant to punish tax payers for an oversight or error but to protect local government against wilful, persistent, long-standing delinquents.

39 Pa. Commonwealth Ct. at 498, 395 A.2d at 706.

*See also, Appeal of Marra,* 40 Pa. Commonwealth Ct. 159, 397 A.2d 836 (1979) (bureau properly chargeable with knowledge of change of owner and new address in County Assessment Records).

In the *Clawson Appeal* Judge ROGERS also observed that the bureau in that case knew that the taxpayers had paid all local taxes for years later than the tax delinquency which resulted in the sale of the property because Section 605 of the Tax Sale Law, 72 P.S. §5860.605, requires the bureau to include in the sale upset price other unpaid taxes for any period subsequent to the delinquency.

Here we have a similar case in which the evidence showed that the Association, as mortgagee, had paid taxes for the years 1975 and 1976 and had asked the local tax collector to send tax bills directly to them, not to their defaulting mortgagors. Moreover, in this case the documentary evidence included copies of checks drawn by the Association to the former and current local tax collector of Bensalem Township, covering the taxes owing in years after the interim tax deficiency was returned as delinquent. The Association here further showed that it made consistent ef-

440

forts with the local tax collector to insure that all taxes due on the property were paid.

This case is different from *Clawson Appeal* chiefly in that the Association had been in the status of mortgagee and did not acquire its title until just before the bureau mailed the last notice.

Nevertheless, where, as here, the express statutory provisions of the Tax Sale Law are not helpful, we can only follow the rationale of the cases cited above. The fundamental inquiry is still the reasonableness of the notice which the bureau attempted to give.

As our Supreme Court in *Ross Appeal, supra,* noted, an element of reasonableness is that the tax collecting agencies not ignor commonsense business practices in attempting to find persons responsible to pay delinquent taxes, before resorting to delinquent tax sale procedures.

Guided by the same rationale, the lower court in this case concluded:

> [W]e find that the 1975 taxes on this parcel had been paid and this we believe to be sufficient notice to the Bureau to alert it to the fact that the failure to pay the $23.10 interim tax bill was through inadvertence or negligence but certainly not a wilful act or a demonstration of the owner's inability to pay this small amount. Met with these facts, we find the Bureau to have had a duty to inquire of the local tax collector where in fact subsequent taxes on the property are not returned unpaid ... [Citation omitted].[3]

---

[3] The lower court also concluded that the bureau could have identified the owner by searching the records in the Recorder of Deeds, Prothonotary or Sheriff's offices. We express no opinion as to whether a requirement of reasonable notice would compel the bureau to search for information outside the tax collection system itself. *See Appeal of Brown,* 44 Pa. Commonwealth Ct. 439, 404 A.2d 437 (1979).

We agree. It was no undue burden on the bureau to have made efforts to garner information from the local tax collector as to whether a commercial mortgagee had been involved in paying taxes on this property for years subsequent to the delinquency.

The testimony of the local tax collector in this case indicated that it is not uncommon for commercial mortgagees to pay taxes on property subject to their liens in the district; and, that these institutions frequently request direct tax billings.

Although the local tax collector also testified that he personally, because of a recent turn-over in tax collectors, might not have been able to immediately ascertain that it was the Association that had been paying taxes on this property, nevertheless if the bureau had alerted him to the imminent delinquency sale, the Association's assumed role of taxpayer might easily have become apparent.

It might indeed be unduly burdensome to require a tax claims bureau to keep itself informed of all situations in which one person assumes responsibility for another's property taxes. However, where, as here, the bureau knows that *taxes for years after the delinquency* have been paid and the subject property is vacant, it is a commonsense business practice requirement of the reasonableness of the notice given under the Tax Sale Law that the bureau inquire of the local tax collector as to whether there is a commercial mortgagee who has been assuming responsibility for taxes on the property.

Sections 501(a) and 603 of the Tax Sale Law, 72 P.S. §§5860.501(a) and 5860.603, support our view here by reflecting sensitivity for the plight of lien creditors on property subject to delinquent taxes. Section 501(a) allows any lien creditor to redeem property within one year after a delinquency claim has been filed and notice given. Section 603 allows a lien

442

creditor, such as the mortgagee here, to stay an impending tax upset sale by entering into an agreement with the bureau to pay off delinquencies.

Thus, remaining mindful of the non-penal nature of the statute we construe, we will affirm the decision of the lower court.

ORDER

AND Now, this 10th day of January, 1980, the order of the Court of Common Pleas of Bucks County dated November 14, 1978, at No. 76-11472-03, is hereby affirmed including that part of the order that requires payment by Commonwealth Federal Savings and Loan Association as set forth in the opinion accompanying that order.

This decision was reached prior to the expiration of the term of office of Judge DiSALLE.