# DeAngelo v. Carbon County Tax Claim Bureau

*Anthony Roberti,* for plaintiff.

*John G. Cipko,* for defendant Carbon County Tax Claim Bureau.

*Roger N. Nanovic II,* for defendant Ronald T. Tyahla.

LAVELLE, *P.J.,* March 3, 1987—Before us are the exceptions and objections of Theresa M. DeAngelo to a sale of her property conducted by the Carbon County Tax Claim Bureau pursuant to the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §5860.101 et seq.

Because Mrs. DeAngelo was delinquent in paying the 1983 county and township property taxes on her vacant lot, the bureau sold the lot at a public tax sale on September 9, 1985, to Ronald T. Tyahla, respondent herein. On November 27, 1985, we entered a decree nisi confirming the sale. Mrs. DeAngelo filed these timely exceptions and objections to the sale, alleging procedural defects by the bureau and asking us to set the sale aside.

The issue here, as in most challenges to Tax Claim Bureau sales, is whether the bureau com-

plied with the numerous statutory notice requirements of the act. After a bench trial on November 6, 1986, we find that the bureau failed to provide Mrs. DeAngelo with due process as set forth in the statutory notice requirements of the act and therefore, we must set aside the sale of Mrs. DeAngelo's lot.

## FINDINGS OF FACT

(1) Theresa M. DeAngelo is the owner of a vacant lot, designated as lot 455, section I, Towamensing Trails, and located in Penn Forest Township, Carbon County, Pa. The lot is identified in the Carbon County Tax Claim Bureau Property Record Cards as no. 22A-51-A455 (330-533). The lot is the only property Mrs. DeAngelo owns in Penn Forest Township.

(2) The lot was purchased by Mrs. DeAngelo and her late husband by deed dated August 21, 1972, and recorded in Carbon County Deed Book 330, page 553. After Mr. DeAngelo's death in 1973, Mrs. DeAngelo, as the surviving tenant by the entirety, became the sole owner of the lot.

(3) Since 1983, Mrs. DeAngelo has continuously resided at 10 Linda Place, Hazlet, N.J. She has not personally visited the lot since 1981 or 1982.

(4) Mrs. DeAngelo was delinquent in paying her 1983 county and township taxes.

(5) On June 20, 1984, the bureau sent, by United States certified mail, return receipt requested, postage prepaid, a notice of the filing of return of taxes and entry of claim for non-payment of the 1983 county and township property taxes, to Mrs. DeAngelo at her address in Hazlet, N.J. This notice was not delivered to Mrs. DeAngelo by the postal authorities, and was thereafter returned to the bureau marked "unclaimed".

(6) On August 21, 1984, the bureau posted on the lot a notice of the filing of return of taxes.

(7) On July 25, 1985, having received no response from Mrs. DeAngelo concerning the return of taxes, the bureau sent a notice of sale for the lot, by United States certified mail, personal addressee only, return receipt requested, postage prepaid, to Mrs. DeAngelo at her residence in Hazlet, N.J. This notice of sale was not delivered to Mrs. DeAngelo by the postal authorities and was thereafter returned to the bureau marked "unclaimed". There was no evidence presented as to the date that the "unclaimed" notice was returned to the bureau.

(8) On August 19, 1985, the bureau posted the lot with a notice of sale.

(9) On August 30, 1985, another notice of sale was sent by United States certified mail, personal addressee only, return receipt requested, postage prepaid, to Mrs. DeAngelo at her address in Hazlet. (Although respondent's proposed findings of fact state that this notice was mailed on August 23, 1985, the "Receipt for Certified Mail" is date stamped, by the post office, August 30, 1985. It is this latter date we find to be the actual date that the bureau mailed the second notice of sale.)

(10) On September 9, 1985, the bureau conducted a public tax sale of the lot. Ronald T. Tyahla, respondent, made the successful bid of $225, which the bureau accepted.

(11) The second notice of sale was received, and signed for, by Mrs. DeAngelo on September 10, 1985, one day after the bureau conducted the tax sale of her lot.

(12) By order of court, dated November 27, 1985, the sale of the lot to Mr. Tyahla was confirmed nisi. Mrs. DeAngelo, within the 60 day period following the decree nisi, timely filed these exceptions and ob-

jections to the sale.

### DISCUSSION

The courts of this commonwealth have steadfastly ruled that the notice provisions of any tax sale statute must be strictly construed in order to guard against a deprivation of property without due process of law. *Patterson v. Oakes,* 260 Pa.Super. 415, 394 A.2d 995 (1978); See *Povlow Appeal,* 49 Pa.Commw. 135, 410 A.2d 376 (1980); See also *Hess v. Westerwick,* 366 Pa. 90, 76 A.2d 749 (1950). This judicial policy of rigid enforcement of tax sale statutes is motivated by our recognition that the forfeiture of an individual's property for non-payment of taxes is "a momentous event under [both] the United States and Pennsylvania Constitutions." *Tracy v. County of Chester,* 507 Pa. 288, 297, 489 A.2d 1334, 1339 (1985). Clearly then, the law commands strict compliance with the statutory notice provisions of the Real Estate Tax Sale Law. *In the Matter of Tax Claim Bureau Sale,* 72 Pa.Commw. 218, 455 A.2d 1294 (1983); *In re Upset Sale Tax Claim Bureau of Bucks County,* 48 Pa.Commw. 435, 410 A.2d 376 (1980). Therefore, in the present case, if any of the statutorily prescribed notices are found to be defective, the tax sale must be voided and set aside. *Casanta v. Clearfield County Tax Claim Bureau,* 62 Pa.Commw. 216, 435 A.2d 68 (1981).

With these fundamental principles in mind, we turn to a consideration of Mrs. DeAngelo's allegations of procedural irregularity in the sale of her lot. She contends, inter alia, that the bureau filed to: (1) immediately post the property with a notice of the return of taxes; (2) provide notice of the availabilty of a redemption period; (3) timely mail the second notice of the impending tax sale; and (4) provide no-

tice of the availability of installment payments. We will address these contentions seriatim.

## Immediate Posting

Section 308 of the act delineates the bureau's duties to notify delinquent taxpayers of the filing of the tax collector's returns of unpaid taxes and the entry of claims. This section provides, inter alia, as follows:

"(a) Not later than the thirty-first day of July of each year, . . . the bureau shall give notice of the return of said taxes and the entry of such claim to each delinquent taxable, by United States registered . . . or . . . certified mail, return receipt requested, postage prepaid, addressed to the owner personally . . . [I]f a notice mailed to an owner . . . is not delivered to him by the postal authorities, then notice as herein provided *shall immediately be posted* on the property affected." 72 P.S. §5860.308(a) (emphasis supplied).

Section 308 plainly and unequivocally mandates immediate posting of a property if notice of the return of taxes is not delivered to the owner by the postal authorities. Mrs. DeAngelo contends that the bureau failed to comply with this statutory requirement. We agree.

The bureau mailed the notice of the return of taxes to Mrs. DeAngelo on June 20, 1984. The aforesaid notice was not delivered to Mrs. DeAngelo and was returned to the bureau marked "unclaimed". (There is no evidence in the record as to the exact date that the notice was returned to the bureau.) Mrs. DeAngelo's lot was subsequently posted with a notice of the return of taxes on August 21, 1984.

Our research has revealed only one Pennsylvania appellate decision directly addressing the requirement of immediate posting under section 308. In

that case, *In re Consolidated Return of Sale of Properties for Delinquent Taxes by the Fayette County Tax Claim Bureau,* 53 Pa.Commw. 25, 416 A.2d 636 (1980), the Commonwealth Court found, on similar facts that the subject property had not been immediately posted and consequently voided the tax sale.

In *Fayette County,* the notice of return of taxes which was returned "unclaimed" had been mailed on June 26, 1973, and the property was subsequently posted on December 1, 1973. Id. On these facts, the trial court found that "the posting was not immediate as is statutorily prescribed and [therefore] the tax sale was without due process of law since the notice provision was not strictly complied with". *Id.* at 28, 416 A.2d at 637. "The trial court, therefore, held that the tax sale was void. . . ." *Id.* On appeal, the Commonwealth Court opined:

"We do not believe that the court below abused its discretion in reaching its conclusion. There was clearly no evidence offered by the county to explain the unreasonable delay from the date of the mailing. June 26, 1973, to the date of posting on December 1, 1973." *Id.*

*Fayette County* is apposite to the present case. In both cases, the notice of the filing of the return of taxes was returned to the bureau marked "unclaimed" and the properties were subsequently posted. The only distinction is that in *Fayette County,* the period of time between sending the notice and posting the property was approximately five months, whereas in the present case, the period was two months. In our view, this is a distinction which does not justify a different result. Further, as we will address below, we consider the bureau's explanation for the two month delay in posting Mrs. DeAngelo's lot to be insufficient.

Although we consider *Fayette County* controlling here, we have also applied the rules of statutory construction in concluding that posting was not accomplished immediately as that term is contemplated in the act. The rather ambiguous term "immediately" is defined in neither the act nor the Commonwealth Court's opinion in *Fayette County*. We, therefore, look to the Statutory Construction Act, Act of December 6, 1972, P.L. 1339, §3, for guidance. Section 1903 of that act, 1 Pa.C.S. §1903, dictates that the words and phrases of a statute, when not defined in the statute, shall be construed according to their common and approved usage.

We are not the first court in this commonwealth to struggle with determining the commonly understood meaning of the related terms "immediate" and "immediately". The Supreme Court of Pennsylvania, albeit in a workmen's compensation context, considered the elusive nature of these terms as follows:

"Immediate" admits of many varieties of definition. It is not a technical word, but elastic and comprehensive; it has a relative meaning, dependent upon the [context] in which it is used. The lexicographers define "immediate" as being "directly connected;" "not remote;" "acting without intervention of another object, cause or agency." Sometimes it means "within a reasonable time" or "as soon as practicable." Bouvier, in his law dictionary, defines it: "As to time: . . . without delay or postponement. [I]t implies not deferred by any lapse of time, but as usually employed it is rather within reasonable time having due regard to the nature and circumstances of the case. This word and immediately (q.v.) are of no very definite signification and are most dependent on the context. In legal proceedings they do not import the exclusion of any interval of time."

*Sussick v. Glen Alden Coal Co.,* 108 Pa.Super. 593, 597, 165 A. 658, 659 (1933).

Black's Law Dictionary defined "immediately" as follows:

"Without interval of time, without delay, straightway, or without any delay or lapse of time. *Drumbar v. Jeddo-Highland Coal Co.,* 155 Pa.Super. 57, 60, 37 A.2d 25, 27 (1974). The word 'immediately' and 'forthwith' generally have the same meaning. They are stronger than the expression 'within a reasonable time' and imply prompt, vigorous action without any delay." (citation omitted) Black's Law Dictionary 675 (5th Ed. 1979).

In our view, the posting of Mrs. DeAngelo's property, more than eight weeks after mailing the notice of return of taxes was not, in any event, done forthwith or without delay, and thus was not accomplished "immediately" as that term is commonly understood. Therefore, the bureau did not post the property immediately as required by section 308(a) of the act.

The explanation for the bureau's delay in posting the lot is, in our view, insufficient. There was testimony by Homer Green, Director of the Carbon County Tax Claim Bureau, that the bureau does not, as part of its normal procedure, post each property as soon as the mailed notice is returned, but instead waits until a number of properties need to be posted, and then posts all these properties on the same day. Although this may or may not be considered posting "within a reasonable time giving due regard for the circumstances", we consider this explanation insufficient for two reasons. First, as we learned from Black's Law Dictionary, supra, "immediately" has a meaning that is stronger than the expression "within a reasonable time" and instead implies prompt, vigorous action without any delay.

Second, because the courts of this commonwealth require that the notice provisions of the Real Estate Tax Sale Law be strictly construed, we do not have the discretion to give the term "immediately" such a liberal construction as to merely mean within a reasonable time.

We recognize that a requirement of "posting immediately" is, at best, imprecise. Therefore, in order to provide some tangible future guidance to the bureau, we hold that, under section 308(a), as soon as the tax claim bureau receives a mailed notice of return of taxes back from the postal authorities, indicating that it was not delivered to the property owner, posting of the property should be accomplished, barring unusual circumstances, within two weeks.

### Notice of Redemption Period

Section 308(a) also provides that:

"Each mailed and posted notice [of the filing of return of taxes] shall:

. . .

"(3) state . . . that [on a day specified in this section] the one year period of redemption shall commence or has commenced to run, and that if redemption is not made during that period, the property shall be sold . . . and there shall be no further redemption after such sale and that (4) state that the owner of any owner-occupied real estate can apply for an extension of the redemption period for up to 12 additional months. . . ." 872 P.S. §5860.308(a).

In the present case, after carefully reviewing the mailed notice of the filing of the return of taxes, we find that it did not contain the information required. Instead, the only information contained on the mailed notice regarding the availability of a redemp-

tion period, appears in a box at the bottom of the notice and reads as follows:

"Notice is hereby given that the property above described has been returned to the Tax Claim Bureau of Carbon County for non-payment of the taxes and a claim has been entered under the provisions of Act no. 542 of 1947. If payment of these taxes is not made to the Tax Claim Bureau on or before December 31, 1984 or no exceptions filed, the claim will become absolute. If the claim is not paid in full, *the property will be advertised and sold by the Tax Claim Bureau. No further redemption will be allowed after such sale.*"

The above notice does not contain the required information concerning the availability of the redemption period, and therefore, is in violation of section 308(a). This defect in the notice, even if standing alone, would be fatal to the tax sale. See *Continental Motels Inc.*, 32 Pa.Commw. 429, 379 A.2d 897 (1977).

### Ten Day Notice of Sale

Section 602 of the act outlines the bureau's duties to provide notice to an owner of an impending tax sale of their property. Section 602(e) of the act provides as follows:

"Notice of the sale shall . . . be given by the bureau as follows:

"(1) At least 30 days before the date of the sale, by United States certified mail, personal addressee only, return receipt requested, postage prepaid, to each owner as defined by this act.

"(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, *at least ten days before the date of the sale,* similar notice of the sale shall be given to each owner who

failed to acknowledge the first notice. . . ." 72 P.S. §5860.602(e) (emphasis supplied).

It is undisputed here that the bureau never received a return receipt from Mrs. DeAngelo, and therefore, the bureau was required, under section 602(e)(2), to send Mrs. DeAngelo a second notice of sale "at least ten days before the date of sale."

In *Courtney v. Commonwealth Civil Service Commission*, 37 Pa.Commw. 356, 391 A.2d 6 (1978), the Commonwealth Court held that when the words "at least" are used in a statute in reference to the time in which an act must be performed, not less than the required number of days must intervene between the act and the triggering date. In counting the number of intervening or "clear" days, both terminal days must be excluded. Id. Therefore, under section 602(e)(2), there must be at least 10 intervening or "clear" days between the mailing of the second notice of sale and the date of sale.

In the present case, the bureau did not send the second notice of sale in a timely fashion. According to the "Receipt for Certified Mail," the second notice of sale was mailed to Mrs. DeAngelo by the bureau on August 30, 1985. The tax sale occurred 10 calendar days later on September 9, 1985. Excluding both terminal days, the date of mailing and the date of the sale, from our calculation of intervening days, there were only nine intervening or "clear" days. Therefore, the bureau has also failed to comply with section 602(e)(2) of the act.

*Notice of availability of installment payment plan*

Section 602(f) of the act provides, inter alia, as follows:

"The published notice, the mail notice and the posted notice shall each state that the sale of any

property may, at the option of the bureau, be stayed if the owner thereof . . . on or before the date of the sale enters into an agreement with the bureau to *pay the taxes in installments,* in the manner provided by this [a]ct. . . ." 72 P.S. §5860.602(f) (emphasis supplied).

In the present case, the notice of sale included the following language:

"The sale of this property may, at the option of the bureau, be stayed if the owner thereof . . ., on or before the sale date enters into an agreement with the bureau to pay the taxes and costs owing on said property in the manner provided by said law."

The notice of sale to Mrs. DeAngelo failed to include any language whatsoever notifying her that she may enter into an agreement with the bureau to pay the taxes in installments. Therefore, the bureau has also failed to comply with section 602(f) of the act.

## CONCLUSIONS OF LAW

(1) The court has jurisdiction over the parties and subject matter of this action and this proceeding is properly before the court.

(2) The Carbon County Tax Claim Bureau, in implementing the September 9, 1985 tax sale of the lot identified on Carbon County Property Record Card no. 22A-51-A455 (330-533), failed to comply with the statutory notice requirements of sections 308 and 602 of the Real Estate Tax Sale Law.

(3) The tax sale of this lot to Ronald T. Tyahla is null and void.

For the foregoing reasons, we enter the following

## ORDER

And now, this March 3, 1987, the exceptions and objections of Theresa M. DeAngelo to the tax sale of

the vacant lot identified on Property Record Card no. 22A-51-A455 (330-533) be and are hereby sustained. It is therefore ordered and decreed that the tax sale of the aforesaid lot by the Carbon County Tax Claim Bureau is declared null and void and that portion of the decree which confirmed this sale nisi is vacated. The Tax Claim Bureau is directed to refund to Ronald T. Tyahla the sum of $225 paid by him in connection with the purchase of the DeAngelo lot.

Theresa M. DeAngelo is hereby granted a 60 day period to redeem the lot. If all taxes, penalties and costs asssessed against the lot are not paid within 60 days of the date of this opinion and order, the Carbon County Tax Claim Bureau may proceed forthwith to resell the property in accordance with this opinion and the provisions of the Real Estate Tax Sale Law.

Costs on the Tax Claim Bureau.