Richard S. HUSAK and Kelly J. Husak

v.

FAYETTE COUNTY TAX CLAIM
BUREAU and E.D. Lewis.

Appeal of: E.D. Lewis.

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2012.
Decided Jan. 3, 2013.

David E. Holland, Erie, for appellant.

John S. Cupp, Jr. and Benjamin F. Goodwin, Uniontown, for appellees.

BEFORE: SIMPSON, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

In this factually complex statutory appeal, E.D. Lewis (Purchaser) appeals from an order of the Court of Common Pleas of Fayette County[1] (trial court) that granted a petition to set aside an upset tax sale on behalf of Richard S. Husak and his wife, Kelly J. Husak (collectively, Owners). The trial court determined the Fayette County Tax Claim Bureau (Bureau) failed to comply with the notice requirements of the Real Estate Tax Sale Law (Tax Sale Law)[2] and voided the September 2010 tax sale.

Purchaser contends the trial court erred in setting aside the tax sale and holding that: Owners were owners under the Tax Sale Law; Owners had standing to object to the tax sale; and, Owners were entitled to notice of the tax sale. Purchaser also contends the trial court erred in setting aside the tax sale where the record established that the Bureau sent the required notices to the Federal National Mortgage Association (Fannie Mae), the record owner of the subject property at the time of the tax sale, and, where a final decree in a quiet title action adjudicated the validity of the tax sale against Fannie Mae. For the reasons that follow, we affirm.

## I. Background

### A. Tax Sale

Owners owned and resided on the subject property since 1996, when Owner Richard Husak acquired the property from his grandmother. In February 2006, upon foreclosure, Fannie Mae purchased the property at a sheriff's sale. Fannie Mae recorded the sheriff's deed. Owners' parents mortgaged their separate property to assist Owners in reacquiring the property from Fannie Mae. Owners continued to reside on the property.

In April 2006, Owners purchased the property from Fannie Mae for approximately $150,000. At that time, Fannie Mae executed a quitclaim deed. *See* Reproduced Record (R.R.) at 149. However, Owners' counsel did not record the non-notarized deed. Rather, Owners' counsel attempted to obtain a notarized original deed from Fannie Mae. Owners assert they did not receive a "corrective" quitclaim deed from Fannie Mae until March 2011, which they immediately recorded. *See id.* at 145.

Meanwhile, from the time Fannie Mae received the purchase price for the April 2006 quitclaim deed to Owners, and the time it provided Owners with the appropriate deed in 2011, the Bureau sent all tax notices to Fannie Mae as the last recorded owner.

However, the taxes on the property were not paid for tax years 2008, 2009, and 2010. In March 2009, the Bureau sent Fannie Mae notice of a tax claim based on the 2008 delinquency, at its address of 1900 Market Street, Suite 800, Philadelphia, PA, 19103. The Bureau received a return receipt signed by a "J. Pierce." *Id.* at 106.

In March 2010, the Bureau sent notice that the 2009 taxes were not paid. Thereafter, the Bureau sent a June 2010 notice

---

**1.** The Honorable Gerald R. Solomon, P.J., presided.

**2.** Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–.803.

of sale for the unpaid 2008 taxes by certified restrictive delivery addressed to Fannie Mae in Philadelphia. *Id.* at 107. The notice advised that an upset tax sale of the subject property was scheduled for September 2010. *Id.* The notice also indicated the total value of the subject property was $120,290 and the approximate upset price was $7,235.43. *Id.*

Further, the Bureau mailed the notice of tax sale to:

FANNIE MAE

1900 MARKET ST STE 800

PHILADELPHIA PA 19103–3517

*Id.* at 108. However, U.S. Postal Service records "indicate that this item was delivered on 06/25/2010 at 06:20 a.m. in PHILADELPHIA, PA, *19102.*" *Id.* at 109 (emphasis by underline added). "J. Pierce" signed the return dated June 25, 2010. *Id.*

In July 2010, the Bureau posted a neon orange "Notice of Public Tax Sale" sign on a telephone pole next to the driveway to the house on the subject property. *See id.* at 142–43.

In August 2010, the Bureau published a "Notice of Public Tax Sale" regarding the subject property in *The Herald Standard, The Daily Courier* and the *Fayette Legal Journal.*[3] *See id.* at 144.

The tax sale took place on September 20, 2010, at which time Purchaser bought the subject property. Shortly thereafter, the Bureau sent Fannie Mae a post-sale notice by certified mail advising that the sale occurred. Again, "Pierce" signed the return receipt. *Id.* at 106. In November 2010, the Bureau recorded a deed for the subject property to Purchaser in the Fayette County Office of the Recorder of Deeds.

In December 2010, Purchaser filed an action to quiet title against Fannie Mae alleging the tax sale was valid and that it divested Fannie Mae of any and all right, title or interest in the subject property. In March 2011, the trial court, through Judge Steve P. Leskinen, decreed the tax sale valid. Approximately 35 days later, Judge Leskinen entered final judgment in the quiet title action.

### B. Petition to Set Aside

In July 2011, Owners filed a petition to set aside the tax sale. They averred they purchased the subject property back from Fannie Mae in May 2006 and received a non-notarized quitclaim deed. Owners' former counsel then requested a notarized deed. However, Owners did not receive a notarized recordable deed from Fannie Mae until March, 2011, well after the tax sale. Owners were willing to pay all taxes due on the property.

Owners further averred they resided on the subject property at all times, but they never received notice of the tax sale. Among other arguments, Owners asserted strict compliance with all three notice requirements (published notice, certified

---

3. We note the published and posted notices provided notice: "TO THE OWNERS OF PROPERTIES DESCRIBED IN THIS NOTICE AND TO ALL PERSONS HAVING TAX LIENS, TAX JUDGMENTS OR ANY OTHER JUDGMENTS OR MUNICIPAL CLAIMS AGAINST SUCH PROPERTIES ..." *See* R.R. at 114 (posted notice); *id.* at 144 (published notice). The language in these notices differs slightly from the requirement in Section 602(d) of the Tax Sale Law that such notice "shall be addressed to the 'owners of properties described in this notice and to all persons having liens, judgments, *or municipal or other claims against such properties.*'" 72 P.S. § 5860.602(d) (emphasis added). However, the Bureau's deviation from the language of Section 602(d) is ultimately irrelevant given our determination that the trial court properly determined the Bureau failed to make reasonable efforts to notify Owners as the actual owners under the particular circumstances here.

mail notice and posted notice) of Section 602 the Tax Sale Law is required. *In re: Upset Sale Tax Claim Bureau McKean Cnty. on September 10, 2007*, 965 A.2d 1244 (Pa.Cmwlth.2009). If any of the Bureau's notices are defective, the sale is void. *Id.* Strict compliance is necessary to guard against the deprivation of property without due process of law. *Id.*

Further, to meet the due process requirements, the Bureau is required to make a reasonable effort to discover the identity and address of persons whose interests are likely to be affected by the tax sale. *Wells Fargo Bank of Minnesota, NA v. Tax Claim Bureau of Monroe Cnty.*, 817 A.2d 1196 (Pa.Cmwlth.2003). The Bureau has the burden of proving its compliance. *Id.* The fundamental inquiry is the reasonableness of the notice given. *In re Upset Sale, Tax Claim Bureau of Bucks Cnty.*, 48 Pa.Cmwlth. 435, 410 A.2d 376 (1980). An element of reasonableness is that the taxing authorities not disregard common sense business practices in attempting to find persons responsible for paying the delinquent taxes before resorting to delinquent tax sale procedures. *Id.* Here, Owners averred, the Bureau resorted to tax sale procedures without employing any common sense business practices in attempting to find the persons responsible for the taxes.

Purchaser and the Bureau filed answers and new matter. Both defendants averred that Owners lacked standing to contest the validity of the tax sale.

## C. Trial Court Decision

Following a hearing at which the parties presented evidence,[4] the trial court set aside the tax sale, directed the Bureau to refund any purchase price to Purchaser and directed the Bureau to accept payment of all delinquent taxes, including penalties, from Owners, on or before March 30, 2012.

In its decision, the trial court first determined Owners had standing to challenge the validity of the tax sale. Despite not recording their deed prior to the tax sale, Owners, as owners of the subject property, were the only persons adversely affected by the tax sale. Therefore, they had standing to challenge its validity. *See William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975) (in order to be "aggrieved" for purposes of standing, a party must have a substantial, direct and immediate interest in the challenged determination; a substantial interest means there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law).

Turning to the notice requirements of the Tax Sale Law, the trial court initially noted Section 602 (notice of sale), 72 P.S. § 5860.602, imposes notice requirements in the form of publication, certified mail and posting of the property. The trial court then focused on Section 607.1(a)[5] (additional notification efforts), 72 P.S. § 5860.607a(a), which provides, with added emphasis:

(a) When any notification of a pending tax sale or a tax sale subject to court

---

4. Owner Richard Husak testified he thought the taxes were paid through his parents' mortgage. Notes of Testimony (N.T), 10/27/11, at 47; Reproduced Record (R.R.) at 76. He did not become aware of the tax sale until September 20, 2010, the date of the sale. *Id.* at 48; R.R. at 77. He did not see the posted notice, which was obscured from view

by his family's cemetery. *Id.* at 53–56; R.R. at 82–85. Owner Kelly Husak similarly testified she never saw the posted notice or received any notice at all concerning the tax sale. *Id.* at 68–69, R.R. at 97–98.

5. Added by the Act of July 3, 1986, P.L. 351.

confirmation is required to be mailed to *any owner*, mortgagee, lienholder *or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all,* then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county's tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

In addition, the trial court recognized, our Supreme Court affirmed that constitutional due process principles require a tax claim bureau in certain circumstances to make additional efforts to determine the correct names and addresses of property owners even though the notices given complied with the Tax Sale Law's publication, mail and posting requirements. *Geier v. Tax Claim Bureau of Schuylkill Cnty.*, 527 Pa. 41, 588 A.2d 480 (1991); *Tracy v. Chester Cnty. Tax Claim Bureau*, 507 Pa. 288, 489 A.2d 1334 (1985).

Here, the Bureau's director, Sarah Minnick (Bureau Director), testified that the March 2009 notice of the 2008 delinquency, which triggered the sale, and the June 2010 notice of sale, both mailed to Fannie Mae, were signed by "J. Pierce" or "Pierce." However, Bureau Director did not know who "J. Pierce" is or whether he served in any capacity for Fannie Mae. *See* Notes of Testimony (N.T.), 10/27/11, at 29; R.R. at 58.

▮ The trial court determined the reasonableness of the Bureau's actions were brought into question because the owner of the property is listed as Fannie Mae, but the property when posted had a tended field of corn and crops. *See* Tr. Ct., Slip. Op., 1/23/12, at 7. Also, the court reasoned that without some indication of employment or agency of J. Pierce on behalf of Fannie Mae, the Bureau failed to establish compliance with the certified mail requirement. Given these circumstances, the trial court, relying primarily on Section 607.1(a)'s requirement for additional notification efforts, concluded *"the Bureau failed to strictly adhere to the notice provisions of the [Tax Sale Law] by failing to exercise reasonable efforts to notify the actual owners when the notification was returned with only a signature and no indication of authority to sign on the corporation's behalf." Id.* at 8 (emphasis added). Purchaser appeals.[6]

**6.** In tax sale cases, our review is limited to determining whether the trial court abused its discretion, rendered a decision without supporting evidence, or clearly erred as a matter of law. *In re 2005 Sale of Real Estate by Clinton Cnty. Tax Claim Bureau Delinquent Taxes*, 915 A.2d 719 (Pa.Cmwlth.2007).

## II. Issues

Purchaser raises two primary issues for our review. First, Purchaser contends the trial court erred in setting aside the tax sale and holding that: Owners were owners under the Tax Sale Law; Owners had standing to object to the tax sale; and, Owners were entitled to notice and thus denied due process. Second, Purchaser contends the trial court erred in setting aside the tax sale where the record established that the Bureau sent notices of tax sale to Fannie Mae, the record owner of the subject property at the time of the tax sale, and, where a final decree in a quiet title action adjudicated the validity of the tax sale against Fannie Mae.

## III. Discussion

### A. Standing; Notice

Purchaser contends the trial court erred in setting aside the tax sale for three reasons: Owners were not "owners" as defined by Section 102 of the Tax Sale Law, 72 P.S. § 5860.102; Owners lacked standing to attack the tax sale; and, Owners were not entitled to notice and thus were not denied due process.

### 1. Statutory Definition of Owner

Here, Purchaser cites Section 102 of the Tax Sale Law which defines "Owner" as:

the person in whose name the property is last registered, if registered according to law, or, if not registered according to law, *the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded* in the county office designated for recording and in all other cases means any

person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property....

72 P.S. § 5860.102 (emphasis added).

Purchaser asserts that the second clause [7] of the Tax Sale Law's definition of "owner" is directly applicable here. Fannie Mae remained the record owner of the subject property until Owners recorded their quitclaim deed in March 2011, long after the September 2010 tax sale.

Section 602(e)(1) of the Tax Sale Law provides (with emphasis added):

(e) In addition to [published notice in two newspapers and once in the legal journal], similar notice of the sale shall be given by the bureau as follows:

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, *to each owner as defined by this act.*

72 P.S. § 5860.602(e)(1). Consequently, Purchaser urges, Owners were not entitled to mail notice under the Tax Sale Law.

Purchaser also cites a recording statute, which is intended to protect *bona fide* purchasers. *See* Section 1 of the Act of May 12, 1925, P.L. 613, *as amended,* 21 P.S. § 351.

Purchaser asserts that the trial court based its erroneous finding of ownership not on the last recorded deed at the time of the tax sale, but on the fact that crops were growing on the subject property. To that end, Purchaser argues *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137 (Pa.Cmwlth.1997), governs this case and makes it clear that the Bureau

---

**7.** Purchaser points out that Fayette County, with a population of less than 500,000, does not maintain a deed registry in the office of the county commissioners. *See Farro v. Tax Claim Bureau of Monroe Cnty.,* 704 A.2d 1137 (Pa.Cmwlth.1997) (counties over 500,000 are required by law to maintain a registry of property ownership with the county commissioners; smaller counties such as Fayette are not). Therefore, the first clause in the definition, relating to registration, is inapplicable.

properly discharged its legal obligation by determining Fannie Mae was the record owner of the property at the time of the tax sale. In *Farro*, this Court stated:

> The [Tax Sale Law] expressly states, as does this court's opinion in [*Grace Building Co., Inc. v. Lanigan*, 15 Pa. Cmwlth. 643, 328 A.2d 919 (1974) ], *that the latest owner of record prior to the tax sale is the owner for purposes of the Act, and, therefore, for purposes of receiving notice under Section 602* .... Under the plain meaning of the relevant statutory provisions, the Farros [previous owners] were not the record owners under the Act and, therefore, they were not entitled to notice of the sale.

*Id.*, 704 A.2d at 1141.

Additionally, Purchaser cites *In re Tax Sale of Real Property Situated in Jeffer-* *son Township*, 828 A.2d 475 (Pa.Cmwlth. 2003) (due process requires tax claim bureau to conduct reasonable investigation to ascertain identity and whereabouts of latest owners of record).[8]

## 2. Standing

Purchaser also contends Owners lack standing to file objections to the tax sale because they were not owners of record or lien creditors. As support, Purchaser cites *Appeal of Yardley*, 166 Pa.Cmwlth. 596, 646 A.2d 751 (1994) (only owners or lienholders may file objections to tax sale; shareholder of corporate property owner lacked standing to attack tax sale); *First Horizon Home Loan Corp. v. Adams County Tax Claim Bureau*, 847 A.2d 774 (Pa.Cmwlth.2004) (mortgagee who was neither owner nor lienholder at time of tax

---

**8.** Purchaser also cites *Szustak v. County of Erie Tax Claim Bureau*, 672 A.2d 864 (Pa. Cmwlth., No. 149 C.D.1995, filed January 5, 1996) (single-judge memorandum opinion by Judge Doyle), an unreported 1996 opinion which held that the definition of "owner" in Section 102 of the Tax Sale Law controls where there is a recorded deed even though the record owners were deceased and had two surviving children, one of which still lived on the property until his death in 1994, after the 1993 tax sale. Although the owners were deceased, Mary Ann Szustak (Ms. Szustak), the surviving daughter and executrix of her mother's estate, did not "conform" the deed of record to reflect her ownership interest until 1995.

Notably, Ms. Szustak did not argue she was entitled to notice of the tax sale as a person having an interest in the property as an heir or executrix of her mother's estate. Rather, Ms. Szustak argued her decedent brother fell within the definition of Section 102 of the Tax Sale Law because he was an heir and lived on the property in "open, peaceable and notorious possession." 72 P.S. § 5860.102. The trial court, however, determined that because the deceased owners were the record owners, the tax claim bureau need not provide notice to Ms. Szustak's decedent brother, even though he lived on the property.

However, as Purchaser concedes, Commonwealth Court Internal Operating Procedure (IOP) No. 414, 210 Pa.Code § 69.414, precludes our consideration of *Szustak*, a 1996 unreported opinion. IOP 414 pertinently provides (with emphasis added), "An unreported opinion of this court may be cited and relied upon when it is relevant under the doctrine of law of the case, res judicata or collateral estoppel. *Parties may also cite an unreported panel decision of this court issued after January 15, 2008, for its persuasive value, but not as binding precedent.* A single-judge opinion of this court, even if reported, shall be cited only for its persuasive value, not as binding precedent."

Regardless of IOP 414, *Szustak* is factually and procedurally distinguishable from the present case. Here, Owners not only continuously lived on the subject property and farmed it, but obtained a deed to it from Fannie Mae in 2006, well before the 2010 tax sale.

In addition, in *Szustak*, Ms. Szustak never specifically averred in her exceptions to the sale that her decedent brother, who resided on the property, did not receive notice; she only averred that she did not receive notice. *See Szustak*, slip op. at 6.

sale lacked standing to attack tax sale); *Petition of Crouthamel,* 48 Pa.Cmwlth. 507, 412 A.2d 645 (1980) (one who is neither owner nor lienholder on the date of tax sale lacks standing to object to it). Here, Owners failed to record their deed until months after the tax sale. Therefore, they were not owners and thus lacked standing to object it. *First Horizon; Yardley; Crouthamel.*

### 3. Due Process

Purchaser next contends that since Owners were not entitled to notice under Section 602, the trial court erred in holding they were denied due process. Again, Purchaser argues our decision in *Farro* controls. In support, Purchaser cites to the following language in *Farro:*

The Act does not require the Bureau to notify anyone not of record with an interest in property subject to a tax sale. Although the notice provisions of the Act must be strictly construed in order to guard against the deprivation of property without due process of law, *Teslovich v. Johnson,* 486 Pa. 622, 406 A.2d 1374 (1979), *the Bureau's duty to search for owners' correct names and addresses in a tax sale is limited to owners of record as defined by the Act.* The Bureau only has the burden of proving that it complied with all statutory notice provisions and applied common sense business practices in ascertaining proper addresses. *Rossi v. Indiana County Tax Claim Bureau* [494 A.2d 526 (Pa.Cmwlth.1985) ].

In the instant case, although the Farros argue that the Bureau knew that they were the latest owners of the subject property, there is no evidence in the record to substantiate this claim. The Bureau, therefore, complied with all statutory and due process requirements when it notified Lavigne, the record owner of the subject property, of the upset sale.

\* \* \* \*

The essence of both Geier and Tracy is that due process requires the taxing bureaus in the Commonwealth to conduct reasonable investigations to ascertain the identity and whereabouts of the latest owners of record of property subject to an upset sale for purposes of providing notice to that party. However, the bureaus' duty to investigate such matters is confined to determining the owners of record and then to use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given.

*Farro,* 704 A.2d at 1142 (emphasis added).

In short, Purchaser contends this Court's analysis in *Farro* of the Supreme Court's decisions in *Geier* and *Tracy* is controlling here. Therefore, Purchaser urges, the record clearly establishes that the Bureau fully and strictly complied with the notice requirements of the Tax Sale Law.

### B. Analysis

#### 1. Standing

We first address Purchaser's argument that Owners lacked standing to file objections to the tax sale because they were not owners or lien creditors. Section 607(b) of the Tax Sale Law provides in part that objections or exceptions to a tax sale may be brought by *"any owner* or lien creditor...." 72 P.S. § 5860.607(b) (emphasis added). The trial court determined that Owners were the actual owners of the subject property at the time of the sale and thus were the only persons who were adversely affected or aggrieved by the tax sale. Trial Ct., Slip. Op., at 2–3. The court thus reasoned Owners had the requisite substantial, direct and immediate interest needed for standing to challenge the tax sale. *William Penn Parking Garage.*

We agree. By purchasing the subject property back from Fannie Mae in April 2006 for $150,000 and receiving a quitclaim deed for it, Owners acquired, at the very minimum, equitable title, a legally recognized interest in the subject property. *See Pivirotto v. City of Pittsburgh,* 515 Pa. 246, 528 A.2d 125 (1987) (fundamental real property rights are created in a purchaser of realty). Consequently, they were clearly aggrieved for purposes of standing to challenge the tax sale. *William Penn Parking Garage.*

Further, the cases cited by Purchaser for Owners' purported lack of standing are all cases where the party attacking the tax sale lacked a substantial, direct and immediate interest in the property similar to that of Owners here. In *Yardley,* we determined a shareholder of a corporate property owner lacked standing to attack a tax sale. In *First Horizon,* we determined a mortgage company which deeded the property to the Department of Housing and Urban Development prior to the tax sale, lacked standing to challenge it. In *Crouthamel,* the challenger did not acquire an ownership interest in the property until after the tax sale. Therefore, she lacked standing to challenge it. As such, these cases are clearly distinguishable from the present case. For these reasons, we discern no error in the trial court's determination that Owners had standing to challenge the tax sale.

### 2. Tax Sale Law; Due Process

■ Having determined Owners had standing to challenge the tax sale, we address Purchaser's argument that the trial court erred in determining the Bureau failed to strictly adhere to the notice provisions of the Tax Sale Law by not making reasonable efforts to notify Owners of the tax sale. As discussed above, the trial court determined the Bureau failed to comply with the additional notification ef-

forts requirement of Section 607.1(a) of the Tax Sale Law, 72 P.S. § 5860.607a(a), where certified mail notice was sent only to Fannie Mae in Philadelphia, and Owners resided on the property and tended a field of crops.

Relying heavily on our decision in *Farro,* Purchaser argues the additional notification efforts requirement of Section 607.1(a) applies only to the Bureau's responsibility to notify owners of record. At first glance, our decision in *Farro* provides support for Purchaser's argument. In that case, the Farros were the previous owners of record. Their property was sold at a tax sale to Lavigne (purchaser Lavigne). The trial court set aside the tax sale because the Farros did not receive notice of it. The court directed the Farros to forward the purchase price and costs of the tax sale to the Bureau, and to provide evidence to the Bureau that all taxes were paid. In addition, the court directed purchaser Lavigne to execute a quitclaim deed to the Farros when the Bureau reimbursed him for the money he paid for the property. The Farros apparently paid the purchase price to the Bureau and purchaser Lavigne delivered a quitclaim deed to the Farros. However, the Farros never recorded the quitclaim deed and failed to furnish proof that the taxes were paid.

As a result, the tax bills continued to be sent to purchaser Lavigne as the record owner. Thereafter, the property was sold at a second tax sale to S2M Associates, a second purchaser. The Farros then sought to have the second tax sale set aside due to lack of notice. This time, the trial court denied the petition on the basis that the Farros were not entitled to notice because they failed to record the quitclaim deed prior to the second sale. The trial court also reasoned the Farros were not entitled to further equitable relief because they refused to comply with the express

conditions of the court order by their persistent refusal to pay any taxes on the premises.

In determining the Farros were not entitled to notice even under the Supreme Court's "additional reasonable efforts" rationale in *Geier* or *Tracy,* this Court reasoned, "[t]he essence of both *Geier* and *Tracy* is that due process requires the taxing bureaus in the Commonwealth to conduct reasonable investigations to ascertain the identity and whereabouts of the latest owners of record of property subject to an upset sale for purposes of providing notice to that party." *Farro,* 704 A.2d at 1142. "However, the bureaus' duty to investigate such matters is confined to determining the owner of record and then to use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given." *Id.*

Nonetheless, in *Farro* this Court recognized that in a petition to set aside a tax sale, the trial court sits as the chancellor in equity. To that end, this Court observed the trial judge:

> did not abuse his discretion in refusing to grant additional equitable relief of the same kind when those seeking equity failed to comply with the conditions of the previous decree that conditioned the equitable relief granted to the Farros to set aside the first tax sale provided the Farros furnished evidence to the Tax Claim Bureau that all taxes were paid and current. Since no evidence of payment of all taxes due and owing was in the Bureau's file, nor is there any evidence of such payment in the record, the Chancellor did not abuse his discretion by denying further equitable relief to petitioners who ignored his previous order.

*Farro,* 704 A.2d at 1143.

As indicated by the above language, we affirmed the trial court in *Farro* at least in part on the basis that the Farros failed to record an otherwise valid quitclaim deed and failed to pay the delinquent taxes as ordered by the court.

Conversely, in the present case, Fannie Mae sent Owners a non-notarized quitclaim deed in April 2006. Owners' counsel at that time then attempted to obtain a notarized deed. Fannie Mae, however, did not deliver a "corrective" quitclaim deed until 2011.

In addition, as the trial court observed, the Bureau made no effort to determine what relationship, if any, "J. Pierce," the person who signed the notices, had with Fannie Mae. To that end, the Bureau's Director testified she did not know who "J. Pierce" is or what his capacity is with Fannie Mae. N.T. at 29; R.R. at 58. In addition, we note that although the notice of sale was mailed to Fannie Mae, 1900 Market Street, Suite 800, Philadelphia, PA *19103,* it was signed by "J. Pierce" in Philadelphia, PA, *19102. See* R.R. at 108–09.

Other than the signed receipts, the Bureau received nothing from Fannie Mae, the record owner of the property, regarding the fact that it sold the property to Owners in 2006 for $150,000. Even when a return receipt is signed, the signature must belong to someone authorized by the owner to accept certified mail. *See Smith v. Pike Cnty. Tax Claim Bureau,* 834 A.2d 1247 (Pa.Cmwlth.2003) (sale voided because husband signed for separated out-of-state wife without her authorization); *Ali v. Montgomery Cnty. Tax Claim Bureau,* 124 Pa.Cmwlth. 557, 557 A.2d 35 (1989) (mailed notice insufficient absent showing that the owner, Muhammad Ali, or a person authorized to accept for mail him, signed the receipt).

Further, Owners openly possessed the subject property prior to and after the tax sale. They resided there and raised crops.

As this Court recognized in *Smith*, the Tax Sale Law "imposes duties not upon owners but upon the agencies responsible for real estate tax sales." *Smith*, 834 A.2d at 1251. Moreover, Section 607.1 of the Tax Sale Law requires, "that where notice of tax sale is mailed to an owner and returned *without the personal signature of the addressee or there are other circumstances raising a significant doubt as to the personal receipt of the Bureaus [sic] notice*, the Bureau must undertake reasonable efforts to discover the whereabouts of that person." *Id.* at 1252. In the absence of any evidence of such efforts, the tax sale must be set aside. *Id.* "The statute must be strictly construed so that the collection of taxes, which can cause the loss of property, conforms to the due process guarantees of our Pennsylvania and federal constitutions." *Id.* (citing *Tracy* ).

Here, the Bureau admitted it had no idea who "J. Pierce" is or if he is authorized to accept certified mail for Fannie Mae. Given these circumstances, we agree with the trial court that Section 607.1(a) of the Tax Sale Law required the Bureau to make additional notification efforts to reach "*any owner*, mortgagee, lienholder or *other person or entity whose property interests are likely to be significantly affected by such tax sale ....*" 72 P.S. § 5860.607a(a). However, the Bureau failed to make any additional notification efforts.

For similar reasons, we believe *Farro* is distinguishable from the present case. In *Farro*, we determined the Farros' failure to comply with the trial court's orders to pay the delinquent taxes precluded any further equitable relief. Here, the trial court found no such misconduct attributable to Owners that would warrant denying them equitable relief. Rather, Owners testified they believed the taxes were being paid through the mortgage.

Moreover, in the present case, the trial court cited the Supreme Court's language in *Tracy* recognizing that the Tax Sale Law was never meant to punish taxpayers who omitted through oversight to pay their taxes. The purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes. *Id.* Further, the collection of taxes may not be implemented without due process of law. *Id.* As noted, we agree with the trial court that the due process requirements of *Tracy* would apply here to Owners as persons whose property interests are likely to be affected by the tax sale.

Given the totality of the circumstances here, we discern no error or abuse of discretion in the trial court's determination that Owners were entitled to mail notice of the tax sale under Section 607.1(a) of the Tax Sale Law. *Tracy.*

### C. Proper Mail Notice; Quiet Title Action

#### 1. Argument

Purchaser also contends the trial court erred in setting aside the tax sale where the record established that the Bureau sent two notices of tax sale to Fannie Mae, the record owner of the subject property at the time of the tax sale, and where a final decree in a quiet title action adjudicated the validity of the tax sale against Fannie Mae.

To that end, Purchaser asserts the trial court erred in holding the Bureau produced no evidence that it met the certified mail requirements of the Section 602 of the Tax Sale Law. First, the evidence shows the Bureau sent notices to Fannie Mae by certified mail, return receipt requested, to the same address in Philadelphia: 1900 Market Street, Suite 800, Philadelphia, PA 19103. This is the same address Fannie

Mae used in its February 2011 quitclaim deed to Owners. *See* R.R. at 142, 149. All notices were signed by either "J. Pierce" or "Pierce."

Second, in December 2010, Purchaser filed a quiet title action against Fannie Mae alleging that the upset tax sale was valid and divested Fannie Mae of any and all right, title and interest in the subject property. Thereafter, the trial court, through Judge Leskinen, decreed that the upset tax sale was valid. In April 2011, Judge Leskinen entered final judgment in the quiet title action. Owners admitted these facts regarding the quiet title action. *See* Owners' Response to Request for Admissions at 7–8; R.R. at 28–29.

Given the quiet title action, Purchaser argues, the trial court lacked the authority to reach a different result in the present case. Therefore, Purchaser asserts, the trial court's ruling must be reversed.

### 2. Analysis

■ First, as discussed above, in light of the circumstances here, the trial court did not err or abuse its discretion in setting aside the tax sale based on the Bureau's failure to comply with the additional notification efforts of Section 607.1(a) of the Tax Sale Law. *Tracy.*

Second, Owners were not parties to Purchaser's quiet title action against Fannie Mae. Also, Owners purchased the subject property from Fannie Mae in 2006 for $150,000 and received a quitclaim deed from Fannie Mae. In addition, Owners recorded a "corrective" quitclaim deed from Fannie Mae in March 2011, prior to the *decree nisi* in the quiet title action. For these reasons, the quiet title action would not have preclusive effect on Owners. *See, e.g., Stevenson v. Silverman,* 417 Pa. 187, 208 A.2d 786 (1965) (for *res judicata* to prevail, four conditions are necessary: identity in thing sued upon; identity of

cause of action; identity of persons and parties; and, identity of quality or capacity of parties suing or sued); *C.J. v. Dep't of Pub. Welfare,* 960 A.2d 494 (Pa.Cmwlth. 2008) (same). Consequently, the trial court did not err in setting aside the tax sale regardless of Purchaser's quiet title action against Fannie Mae.

### IV. Conclusion

For the above reasons, we discern no error in the trial court's decision to set aside the September 2010 tax sale. Accordingly, we affirm.

### *ORDER*

**AND NOW,** this 3rd day of January, 2013, the order of the Court of Common Pleas of Fayette County is **AFFIRMED.**